State ex rel. Life Insurance Co. v. Trimble.

THE STATE ex rel. NEW YORK LIFE INSURANCE
COMPANY v.' FRANCIS H. TRIMBLE et al.,
Judges of Kansas City Court of Appeals, and
GEORGE STEVENSON, JR.

In Banc, December 30, 1924.

**LIFE INSURANCE: Illustration Slip of Guaranteed Dividend.** An illustration slip of the cash value at the end of twenty years, pasted on the top of the last page of a twenty-payment life insurance policy, which does not promise that such estimated amount will be paid, which does not purport to be a contract, which contains a recital that "the company does not guarantee the same dividends under policies issued now to mature hereafter" and which refers to the "other side" for "conditions of contract," and on the other side it is stated and repeated again and again, in plain language, that the company guarantees only the dividend to be apportioned at the end of the twenty-year accumulation period, and guarantees or promises no amount of dividend, cannot be held to be a binding contract upon the company to pay such estimated or illustrated dividend; and the Court of Appeals in ruling that by said "illustration slip" the company guaranteed the payment of the estimated dividend contravened the rulings of this court in State ex rel. v. Ellison, 269 Mo. 1. c. 420, and State ex rel. v. Trimble, 297 Mo. 659, that, where the plain language of the policy and the illustration slip is without ambiguity, such unambiguous language is to be given its plain meaning, and there is no room for construction.

Citation to Headnote 1: Insurance, 32 Cyc. pars. 23, 258, 270.

*Certiorari.*

RECORD QUASHED.

*Lathrop, Morrow, Fox & Moore* for relator.

The Court of Appeals holds that the language printed in the center of the "illustration blank" is of no controlling effect, and construes the blank as a con-

tract or promise to pay a specified sum of money. Such construction is contrary to controlling decisions of the Supreme Court. Buxton v. Kroeger, 219 Mo. 224; Sconce v. Lumber Co., 258 Mo. 616; Calloway v. Henderson, 130 Mo. 86; State ex rel. v. Trimble, 297 Mo. 659; Liggett v. Bank, 233 Mo. 590; State ex rel. v. Ellison, 269 Mo. 410; Turner v. Fidelity & Casualty Co., 274 Mo. 260.

*Fred A. Boxley* for respondent.

(1) The opinion of the Court of Appeals did not make a new contract for the parties. It followed the well-established rule that where repugnant or inconsistent clauses appear in a policy the court will give effect to that one most favorable to the assured. State ex rel. v. Allen, 295 Mo. 318; Drucker v. Ins. Co., 223 S. W. 989; Wood on Insurance, pp. 60-62. (a) The small-type clause did not say that the amount set out in writing would not be the total cash value. It merely stated that the amount of dividends, being profits, were not guaranteed. Under the settled law of this State the burden was on relator, if it denied the figures, to prove what was the correct amount. This it failed to do. Thomas v. Equitable Life Assur. Soc., 198 Mo. App. 533; Punton v. U. S. Life Ins. Co., 245 S. W. 1080; Timlin v. Ins. Co., 141 Wis. 276. (b) This court has considered and condemned an insurance policy containing small-type conditions. It denounced this method of setting out material points of the contract in small types as a fraud on the applicant for insurance. State ex rel. v. Revelle, 260 Mo. 119.

JAMES T. BLAIR, J.—The writ brings into this court the record of the Kansas City Court of Appeals in the case of George Stevenson, Jr., v. New York Life Insurance Company. That was a suit upon a limited payment accumulation policy for $2000. The amount sued for ($1812) was composed of a guaranteed reserve

of $1078 and $734, which second sum was alleged to constitute guaranteed dividends over a twenty-year period. Stevenson recovered the full amount, and the company appealed. The Kansas City Court of Appeals affirmed the judgment. This is the record sought to be quashed.

There are two particulars in which relator contends the opinion of the Court of Appeals conflicts with decisions of this court. One of these is in the holding that a Kansas statute was in the case and governed the contract, and the other is that a "slip attached was a part of the policy, notwithstanding the statement therein that it was merely an illustration of what the privileges of the assured might be," and constituted a guaranty of dividends in the sum of $734.

The controversy concerning the application of the unpleaded and unproved laws of Kansas to the case, with the effect that they were held to defeat a policy contract that New York laws should govern, need not, in the view we take of the case, be determined.

On the other question the opinion of the Court of Appeals, under our decisions, gives access, for the purpose of this proceeding, to the facts which will follow. The policy was executed by the company on May 22, 1895. March 15th of each year was the premium date, and the accumulation period of the policy ended March 15, 1915. The annual premium was $107.20. There are the usual provisions found in such policies. Among others, the application is made part of the policy, and the "benefits and provisions" set out on a subsequent page are incorporated by ample reference. Ten premium payments were to be made, and ten only. This concludes the first page. Under the head of "Benefits and Provisions," on the second page of the policy, it is provided:

"This policy participates in surplus as hereinafter provided, but no dividend shall be apportioned to it before the end of the accumulation period. If the insured elects to continue this policy beyond the accumulation period under one of three benefits first named below, no

further dividend shall be apportioned to it before the end of each period of five years thereafter.

"The accumulation period of this policy ends on the 15th day of March, 1915.

"The insured shall then be entitled, if living, and if the premiums have been duly paid in full, to select and receive one of the six benefits following:

"First. To continue this policy without further payment of premiums and to receive the dividend then apportioned by the company in cash; or

"Second. To continue this policy without further payment of premiums and to receive the dividend then apportioned by the company converted into an annuity; or

"Third. To continue this policy without further payment of premiums and to receive the dividend then apportioned by the company converted into additional paid-up insurance without participation in surplus, subject to evidence of good health satisfactory to the company; or

"Fourth. To discontinue this policy and to receive its entire cash value, as stated below, in cash; or

"Fifth. To discontinue this policy and to receive its entire cash value, as stated below, converted into an annuity; or

"Sixth. To discontinue this policy and to receive its entire cash value, as stated below, converted into paid-up insurance without participation in surplus, any excess over the face amount of this policy being subject to evidence of good health satisfactory to the company.

"The company guarantees that the entire cash value of this policy at the end of the accumulation period shall be one thousand and seventy-eight dollars, and in addition the dividend then apportioned by the company.

"Unless the insured shall notify the company in writing, before the end of the accumulation period, which benefit has been selected, the dividend then apportioned by the company shall be converted into an annuity, as provided in the second benefit.

State ex rel. Life Insurance Co. v. Trimble.

"This policy participates in surplus only as hereinbefore provided."

Then follow provisions concerning loans on the policy, and a paragraph to the effect that "no agent has power in behalf of the company to make or modify" the policy or bind the company by promises or representations and the like. Provisions appear concerning payment of premiums, re-instatement, proofs of death, nonforfeiture, and the like. Then follows a "Table of Guaranties, if payment of premiums is discontinued: Provided there is no indebtedness against this Policy (Pursuant to the Insurance Law [Chapter 690, Laws of 1892] of the State of New York)."

"If the premiums are paid . . ." Then follow tables showing, in case 3, 4, 5, 6, 7, 8, 9 or 10 payments have been made, (1) the respective dates to which the policy will be continued for its full amount, or (2) the respective sums, six, eight, ten, twelve, fourteen, sixteen or eighteen hundred dollars, of paid-up insurance for which the policy would be indorsed "as hereinbefore provided." This ends the second page.

The third page of the policy contains the application, warranties, other agreements of insured and the medical examination. Among other things insured agreed: "2. That inasmuch as only the officers at the Home Office of the company in the City of New York have authority to determine whether or not a policy shall issue on application, and as they act on the written answers referred to" (those in the application and medical examination) "no statements, promises or information made or given by, or to, the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company or in any manner affect its rights, unless such statements, promises or information be reduced to writing, and presented to the officers of the company at the Home Office, in this application. 3. That in any distribution of surplus or apportionment of dividend, the principles

and methods which may be adopted by the company for such distribution or apportionment and its determination of the amount equitably belonging to any policy which may be issued under this application, shall be and' are hereby ratified and accepted.''

Then follow provisions as to the taking effect, suit on and form of policy, and then the medical examination and signatures to the policy by relator's representatives.

The ''fourth page'' of the policy contains only this: ''New York Life Insurance Company. Insurance on the life of George Stevenson, Jr. Policy No. 677112. Amount $2000. Kansas Branch, New York Life Ins. Co.''

The ''Illustration'' slip which gave rise to this controversy was pasted to ''the top margin of page 3,'' which page contained the application and medical examination, but did not contain any agreement on the part of the company. It is not referred to in the policy. The slip mentioned was headed: ''This blank may be used to illustrate all ordinary life forms of Accumulation Policies, and other forms where the accumulation period is the same or longer than the premium-paying period.'' Beneath this, in capital letters, appears:

''ILLUSTRATION OF THE ACCUMULATION POL-
ICY OF THE
''NEW YORK LIFE INSURANCE COMPANY.''

Beneath this last the page is divided into two columns. In the left hand column, in the order in which they are given, proceeding downward, appears the following:

''Plan, Ten Payments; 20 year accumulation; age 35; Amount of Policy $2000; Anunal Premium, $107.20; Loans at 5%, 6th year $380; 11th year up to $856; 16th year up to $962.'' In the right hand column, proceeding the same way, are these:

''(1) Cash value at end).....Reserve     $1078.00
          of 20 years     ).....Dividend       734.00
                    Total cash value.........   $1812.00

or
"(2) Equivalent in paid up Insurance
(purchased by above cash value)..  $3360.00
or
"(3) Draw in cash (Dividend)..........$ 734.00
and
"Continue policy of $2000.00
drawing dividends thereafter."

Between these two columns, running up and down the full length of the columns, printed in red ink, are seven lines which read:

"The only figures authorized by the company to be inserted in this blank are those printed in the illustrated book of the current year for this class of policy. The authorized figures representing or indicating dividends are those of actual settlements made during the current year. Being profits, the company does not guarantee or promise the same dividends under policies issued now to mature hereafter."

This is printed and spaced so that it is almost three inches long and nearly three-quarters of an inch in width. It occupies what is practically the center of the slip, from all margins, and runs about half way across it.

Below this and the two columns there appears:

"Option No. 2 is subject to satisfactory re-examination on limited payment life and endowment policies.

"Option No. 3 is not offered on endowment policies. When Option No. 3 is selected on limited payment life policies, no further payments by the insured are required. When Option No. 3 is selected on ordinary life policies, premium payments will continue at the original rate."

Then, in capital letters, below: "FOR CONDITIONS OF CONTRACT, SEE OTHER SIDE."

On the "OTHER SIDE" this appears:

"Insurance That Insures.

# 302

"A Policy

Absolutely without Restrictions as to occupation, residence, travel, habits of life, or manner of death.

"A Policy

With No Conditions Whatever. Payment of Premium alone required.

"A Policy

With a month's Grace for payment of premiums, interest at rate of 5% for actual time deferred. Policy will be paid in full in case of death during the month of grace, less only the overdue premium.

"A Policy

Allowing re-instatement, in case of lapse, Under Easy Conditions.

"A Policy

Automatically non-forfeitable after three annual premiums have been paid, the policy being extended for its full amount for a period shown therein, without action on the part of the insured, or endorsed as paid-up for an amount shown therein on request within six months.

"A Policy

Positively incontestable after one year.

"W. H. Kelly Spl. Agt.

"312 N. Y. Life Bldg.

"Kansas City, Mo."

The Court of Appeals states that the uncontradicted evidence shows that the illustration slip was attached to the policy when it was delivered to Stevenson. The court says:

"The only dispute as to these figures refers to the item of $734 dividend, plaintiff claiming that as this sum was specified in the illustration slip, defendant is thereby obligated to pay this amount. On the other hand, defendant denies that these figures were guaranteed, under the contract, and declares they were included in the illustration slip merely as an estimate."

And again:

"The parties seem to agree that the principal point for our determination is whether or not this illustration

slip attached to the policy, as aforesaid, constitutes a promise to pay at the end of twenty years, as the cash value of the policy, the sum of $1812. Plaintiff urges that it does, while defendant, claims that the dividend item amounted to $262.16 instead of $734, and it is upon this difference of opinion that this legal controversy is waged."

, Upon this question the Court of Appeals wrote as follows:

"This brings us to the remaining point in the case, namely, as to whether or not the slip attached was a part of the policy, notwithstanding the statement therein that it was merely an illustration of what the privileges of the assured might be. We think there can be no doubt but that it should be taken and considered as though the defendant itself had filled in the blanks and attached the slip to the policy and then delivered it to the plaintiff. It is noted, also, on the face of said slip that all items appearing thereon, excepting the amount of the dividend, are guaranteed by defendant, and the estimated item of $734 is bracketed with the amount of reserve of $1078, which is guaranteed, or authorized by the company. In our application of the law to the facts of this case, we follow the rule declared by this court in Thomas v. Life Assurance Co., 198 Mo. App. 533, 205 S. W. 533, and followed in Punton v. Insurance Co., 245 S. W. 1080. It was held in the Thomas case that where a life insurance company attached such a slip of paper to a policy wherein it stated, by way of illustration of what the policy would earn as surplus in a twenty-year period, what similar policies had earned in other similar periods, such paper made a prima-facie case for the assured that his policy would earn a like amount in the absence of the company showing the actual fact which was within its knowledge and unknown to the assured. The opinion stated, page 541: 'Now that showing was of some probative force. The true amount was wholly unknown to plaintiff, but was fully known to defendant.

It had data at hand from which it could, at any moment, furnish complete information. In these circumstances was not the *onus* thrown on defendant to show the true amount if it meant to dispute the "green slip illustration?" There is a rule of evidence—that where knowledge of a material fact lies with one party he must prove it (Clifford v. Donovan, 195 Mo. 266, 285; Frame v. Sovereign Camp, 67 Mo. App. 127, 135); the other party being unable to produce evidence of it, it will be presumed to be that which would be most advantageous to the party who cannot produce it as against him who can. . . . It would be as unjust as it is absurd to say that an insurance company may apportion an arbitrary amount as the surplus and when its correctness is questioned, to allow it to hide the fact by refusing to produce the evidence showing such fact.'

"It is urged by defendant that plaintiff could not have been misled by the item of $734 dividend in the illustration slip because it was stated in print, on the face thereof, that this amount was not guaranteed. But, as stated above, the printing in which this statement appears is in very small type, much smaller than the rest of the printing on the slip, and is in red ink. Courts do not look with favor upon this method of setting out material points in contracts, and we must rule that the statement so printed in this contract is not controlling. This situation did not arise in either the Thomas or Punton case above cited.

"Further it is urged that the defendant did not authorize the attachment of the slip to the policy and that it was attached thereto after said policy left the hands of defendant. There can be no doubt that the agent who delivered the policy, by mail or otherwise, to the insured was the agent of defendant for the purpose of such delivery, and when so delivered the slip in question was attached to said policy and became part of the contract, and that the company is bound thereby.

"Defendants declare there is no evidence of record that any inducements were held out to plaintiff at the

time the policy was applied for that the amount of the dividend would be $734, or any other specified amount. Accepting this statement as true, it is also a fact that the slip in question was attached to the policy when it was delivered to plaintiff, and we may not say that the statements in this slip were not an inducement to plaintiff to accept the policy and continue the payment of premiums. Admitting as true defendant's statement to the effect that the dividend amount set out in the illustration was merely an estimate based upon the experience of defendant as to the amount paid on policies of the same class at a period then ended, it is well known that parties are constantly undertaking financial obligations where the results are as uncertain as they were in this transaction; and while this element of uncertainty as to amount was present, it was one which the parties well might agree to fix definitely by an estimate based on results theretofore ascertained from experience in this class of policies under similar or like conditions. [Timlin v. Ins. Co., 141 Wis. 276.]''

After re-stating the question for decision to be ''whether or not the slip attached was a part of the policy, notwithstanding the statement therein that it was merely an illustration of what the privileges of the assured might be,'' the court held:  (1) That the illustration slip was attached by relator's agent and authority; (2) that ''on the face of said slip all items appearing thereon, excepting the amount of the dividend, are guaranteed by defendant, and the estimated item of $734 dividend is bracketed with the amount of reserve of $1078, which is guaranteed on authority of the company;'' (3) that the rule applied in Thomas v. Life Ins. Co., 198 Mo. App. 553, governs this case, wherein it was held that the amount in an illustration slip was prima-facie proof of the amount earned by the policy. It seems the court did not directly decide the question it stated the parties presented.

It is obvious that the policy in this case, when the illustration slip is left out of consideration, makes it so

plain that no dividend is apportionable, determinable or payable until the end of the twenty-year accumulation period in 1915, that there cannot be doubt about it. Time after time the plain language to that effect is repeated or referred to. Then in the provision (Fourth) which entitles the insured to discontinue the policy and receive its entire cash value (and this is the provision upon which insured's action on the policy is founded), the right given is one "to discontinue this policy and to receive its entire cash value as stated below." When insured sought to select the benefit he would enforce and chose this "Fourth" benefit or provision, he was expressly sent by it to the provisions "below" and immediately following the listing of the six benefit provisions. The provision "below," to which insured was thus sent by the "Fourth" paragraph, which he had chosen as the one he would adopt in settlement, advised him in plain terms that "the company guarantees that the entire cash value of this policy *at the end of the accumulation period* shall be $1078, and, in addition, the dividend *then* apportioned by the company;" that unless notice in writing was given "before the end of the accumulation period," as to which benefit had been selected, "the dividend *then* apportioned by the company shall be converted into an annuity, as provided in the second benefit." Then this appears: *"This policy participates in surplus only as hereinbefore provided."* So far it is indisputable that it is plainly stated that there can be no participation in surplus except in accordance with the provisions on page two of the policy and that these provisions make it clear that no sum, payable as a dividend, is guaranteed or can come into existence until the end of the twenty-year accumulation period. In none of these provisions does insured claim, nor could he claim, that he finds anything to support his position on the point under consideration. He bases his action on the illustration slip. This does not appear under the head of "Benefits and Provisions." It is attached to the

page which contains the application and medical examination. It *follows* the provision that, "*This policy participates in surplus* only as *hereinbefore* provided." The slip does not in position or language purport to be a contract or part of a contract. It is labeled in letters both large and small an "Illustration of the Accumulation Policy." At the end of it appears a reference to the "other side" for "conditions of contract." These "conditions" on their faces, are not conditions of a particular contract. They are mere summaries of conditions to be found in policies. They are statements in advertising language, of policy "talking points." In addition to all this, there is printed in *red ink,* in seven lines running vertically for three inches through the middle of the "slip" a plain statement in plain type to the effect that the dividend figures are mere statements of dividends on policies which *matured* in the current year (1895) and that "being profits, the company *does not guarantee* or promise the same dividends under policies issued now to mature hereafter."

It is this "illustration slip" which constitutes insured's guaranty of $734 on dividends, if he has one. The policy itself expressly provides to the contrary. It also provides that the "slip" shall not be considered on the question of participation in surplus, as already pointed out.

In this situation the Court of Appeals holds two or three things. One is that the type used in printing on the slip, the red warning that the slip does not guarantee any amount as a dividend, is small. The court says:

"The printing in which this statement appears is in very small type, much smaller than the rest of the printing on the slip, and is in red ink. Courts do not look with favor upon this method of setting out material points in contracts, and we must rule that the statement so printed in this contract is not controlling."

If the court is right about this, it disposes of the part of the slip which was printed in red ink. The doing of

that in no way adds anything to the other language on the slip. Unless what is left has in itself language which aids the insured, the elimination of the matter in "very small type" puts him in no better position. The court then moved to a question other than that it had previously stated. It then proceeded to hold that the "Illustration Slip," attached in 1895, was prima-facie proof of the amount of actual reserve which *in fact accumulated from 1895 to 1915 and was apportionable to insured's policy in 1915.* To do this it assumed that the "slip" was attached to the policy "by way of illustration of what the policy would earn as surplus in a twenty-year period, and refers to the Thomas case in this connection. The facts in the Thomas case are different from those in this case. It is not necessary, for that reason, to disapprove that decision in respect to the point now being considered In this case the slip is in no sense an "illustration of what the policy would earn as surplus in a twenty-year period." Omitting the matter in red ink, as the Court of Appeals did, the part which remains contains nothing which justifies any construction or inference that the company was by it representing that the amount which appeared on the slip as "dividend" was to be understood as anything relating to the policy's future dividends except a simple statement of a sum by way of illustration. The provisions under "Benefits and Provisions" are not in small type and they, also, expressly and with almost tiresome repetition, state and re-iterate, or necessarily imply, the fact that no amount as dividend is or can be promised or guaranteed. For this reason the conclusion reached in this connection was wrong.

The showing "on the face of the slip" had no probative force unless the slip and contract are to be given a construction which gives plain and unambiguous language a meaning out of accord with the usual and natural meaning of the words employed. It was by this means alone that the slip in this case could become a foundation for the adoption and application of the

ruling in the Thomas case.  The plain language of this policy and slip is without ambiguity and there is no room for construction.  In construing it contrary to that meaning, the Court of Appeals brought its decision into conflict with decisions of this court.  Unequivocal language is to be given its plain meaning, though found in an insurance contract.  [State ex rel. v. Ellison, 269 Mo. l. c. 420; State ex rel. v. Trimble, 297 Mo. 659, 249 S. W. l. c. 905.]  This is the general rule everywhere, as shown by text-books and decisions.

It is not necessary to decide whether, as a matter of law, the elimination of the red-inked part of the slip was wrong and conflicted decisions here.  Neither is it necessary to pass upon the soundness of the Thomas case.  There is a strong dissent in that case which may be read with profit.  It may be said that the argument in that case and in this that there is some impeachment of the company's dividend figures because of the fact that it had the facts for dividend apportionment and insured did not have them, adds nothing to insured's position.  If this case were an attack on the fairness of the apportionment made, that would be an issue.  It is not such an attack.  The case is grounded upon the contention that a $734 dividend was guaranteed.  There is, in the facts stated in the opinion, no basis for a claim that there was fraud in the apportionment.

The record is quashed.  *Graves, C. J.,* and *David E. Blair, White* and *Ragland, JJ.,* concur; *Woodson, J.,* dissents; *Walker, J.,* absent.