STATE OF MISSOURI at the relation of THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a Corporation, Relator, v. HOPKINS B. SHAIN ET AL., JJ. of the Kansas City Court of Appeals.—127 S. W. (2d) 675.

Court en Banc, May 2, 1939.*

*NOTE: Opinion filed at September Term, 1938, April 4, 1939; motion for rehearing filed; motion overruled at May Term, 1939, May 2, 1939.

*William C. Michaels, Kenneth E. Midgley, Boyle G. Clark,* and *Paul M. Peterson* for relator; *Ralph W. Hyatt, Michaels, Blackmar, Newkirk, Eager & Swanson* and *Clark, Boggs, Peterson & Becker,* of counsel.

*John J. Cosgrove* and *Carl L. Anderson* for respondents.

DOUGLAS, J.—This is an original proceeding in certiorari to review for conflict the respondents' decision in the case of Mary Gasperino, Appellant, v. The Prudential Insurance Company of America, a Corporation, Respondent, 107 S. W. (2d) 819.

The plaintiff is the beneficiary in an insurance policy which contains a provision for "double indemnity" in case the insured's death was the result of an accident. The insured died of typhoid fever. Plaintiff has sued for the additional indemnity claiming the death was the result of accidental means and therefore covered by the policy. The facts are undisputed and judgment on the pleadings was rendered for the defendant. On appeal, the Kansas City Court of Appeals reversed the judgment of the trial court.

During the hot weather in July the insured found the tap water, which was piped to his home from the city waterworks in Lexington, warm and unpalatable so he drank the cool and refreshing water from an old, unused well in his backyard. Unknown to him there were typhoid germs in the well water. He soon took to his bed with typhoid fever. He suffered the usual effects of the disease such as diarrhea, passing blood, swollen mouth, lips and tongue, cracked and blackened lips, swelling in his abdomen and finally delirium. He died. The parties admit that he died solely of typhoid fever and that it is a specific, infectious disease and cannot be contracted through a bruise or wound, but can only be contracted by being taken into the alimentary canal with food or drink containing typhoid germs.

Plaintiff claims under the following provisions of the policy:

"The amount of Accidental Death Benefit specified . . . shall be payable . . . immediately upon receipt of due proof that the death of the Insured occurred . . . as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which . . . there is a visible contusion or wound on the exterior of the body, . . . provided, however, that no Accidental Death Benefit shall be payable if the death of the Insured resulted . . . directly or indirectly from . . . disease in any form."

In sustaining her claim under such provisions the respondents held that the taking of the germs was accidental, the germs were an external means producing violent injury resulting in death; the

cracked lips constituted the *visible contusion or wound* on the exterior of the body; and that the provision excluding death from disease must be construed not to apply in this case because the disease followed or was incidental to accidental bodily injuries caused by the germs. Relator contends in so construing the policy the respondents gave to plain and unambiguous language an unusual and unnatural meaning.

■ On certiorari the question whether the decision of the Court of Appeals is correct on the merits is, of course, no proper concern of this Court. This Court has not previously considered the particular question decided by respondents. Therefore, the sole issue in this proceeding is whether, in construing the language of the policy, the Court of Appeals' opinion conflicts with the controlling decisions of this Court which hold that unambiguous language in an insurance policy is not open to construction, but must be given its plain meaning and be enforced as written. ■ In deciding this issue we have the right to, and we must, determine whether the language of the policy is ambiguous. [State ex rel. Metropolitan Life Insurance Co. v. Allen, 337 Mo. 525, 85 S. W. (2d) 469.] Where there is no ambiguity, there is no room for construction. Unequivocal language is to be given its plain meaning though found in an insurance contract. [State ex rel. New York Life Insurance Co. v. Trimble, 306 Mo. 295, 267 S. W. 876.] This is so even when considering a restrictive provision of a policy. [Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S. W. (2d) 99.] Needless to say, we are confined to our own decisions in reviewing for conflict, but in determining whether the language of a policy is ambiguous, since we have not previously considered the same or similar language, we may look to the decisions of other states. This is for the reason that the rule is settled throughout the nation as well as in this State that the terms of a contract of insurance, like other contracts, ought to be taken, understood and given effect in their plain, ordinary and popular sense.

■ In deciding if the "double indemnity" provision of the policy covered this case, the respondents had two questions to determine. The first: Was the death of the insured from typhoid fever contracted by drinking water, which contained without his knowledge typhoid germs, the result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means of which there was a visible contusion or wound on the exterior of the body? It would be impossible to reconcile all the cases which have considered whether death was the result of external, violent and accidental means. Taking each word separately, so many interpretations and so varied applications of them can be found in our various state jurisdictions and in England that one may piece together an interpretation of the whole so as to present almost any desired result. As applied to typhoid fever, where policies did not expressly exclude death from disease, we find cases holding that death from such cause

was covered under a policy indemnifying for accidental death. One of them, strongly relied on by respondents, is Christ v. Pacific Mutual Life Insurance Company, 312 Ill. 525, 144 N. E. 161. Other cases have held death from typhoid to be an accident under Workmen's Compensation Acts. [John Rissman & Sons v. Industrial Commission, 323 Ill. 459, 154 N. E. 203; Wasmuth-Endicott Co. v. Karst, 77 Ind. App. 279, 133 N. E. 609; Ames v. Lake Independence Lumber Company, 226 Mich. 83, 197 N. W. 499; Vennen v. New Dells Lumber Company, 161 Wis. 370, 154 N. W. 640.] Some cases have held death from typhoid or other disease to be accidental under policies whose purpose was to protect an employer from all tort liability because of accidents to his employees. [Hood & Sons v. Maryland Casualty Company, 206 Mass. 223, 92 N. E. 329, 30 L. R. A. (N. S.) 1192; Aetna Life Insurance Co. v. Portland Gas & Coke Co., 229 Fed. 552, L. R. A. 1916D, 1027.] Death caused by poison in food or drink has been widely held to be an accident. [O'Connor v. National Life Insurance Co., 208 Mo. App. 46, 232 S. W. 218; Zurich General Accident & Liability Insurance Co. Ltd. of Zurich, Switzerland, v. Flicklinger, 33 Fed. (2d) 853.] Under such conditions we cannot consider this first question because in certiorari we may not substitute our judgment for that of respondents. Therefore, we expressly do not pass on the conclusion that in the ordinary sense of the words contracting an infectious disease through the normal consumption of water (or food or air) infected with bacilli which cause a disease, is the suffering of bodily injuries from accidental means.

The second question presented to the respondents was: Does death from typhoid fever result directly or indirectly from disease in any form? This question does concern us because it calls for determination whether the clause excluding death from disease is ambiguous. If it is ambiguous, then the respondents had the right which they have exercised to construe it, and under their construction to determine whether it applied to the facts in this case. Such provision has been considered chiefly in only one class of cases. Those are cases where disease followed a violent external injury to the body. They have declared the rule where death results from disease which follows as a natural, though not as a necessary, consequence of an accidental physical injury (for illustration, from blood-poisoning infecting a break in the skin), then the death is within the terms of an accident policy because the death is the proximate result of the injury, and not of the disease as an independent cause. The disease is a mere link in the chain of causation between the accident and the death. Under such conditions an exclusion clause has been construed not to apply. [See 6 Cooley Briefs on Insurance (2 Ed.), 5346; 5 Couch on Insurance, sec. 1141.] Although the case of Cameron v. Massachusetts Protective Assn., 220 Mo. App. 780, 275 S. W. 988, is within the above rule the respondents hold that the construction applied there must be

applied here despite the fact that the parties admitted that the typhoid came from drinking the water and the disease cannot be contracted through a bruise or wound. The decision in the Cameron case is not at all pertinent here. The facts in that case disclose that blood-poisoning followed the lancing of a pimple on insured's arm which brought on in rapid progression pneumonia which resulted in death. The decision is founded on the holding in Cary v. Preferred Accident Insurance Co., 127 Wis. 67, 106 N. W. 1055, where blood-poisoning followed an accidental injury causing an abrasion. There it was held that the proximate cause of death was the accidental injury which produced the abrasion through which the bacteria entered, causing the blood-poisoning. The disease resulted and sprang from the injury and was not the proximate cause of the death. In this case respondents say that taking the germs caused an injury which in turn resulted in the disease, therefore death was due to injury and not to disease, so was not within the exclusion clause. Would this result be reached if the clause was viewed in the light of common understanding as revealed in the common speech of men which is the test that must be applied? We think not. Common understanding would force the conclusion that typhoid fever, the disease, was the proximate, procuring cause of death. Any bodily injuries suffered were an incident of the disease. Respondents' construction fails to give effect to the plain words of the policy which exclude death which results from disease. To uphold such a construction would decree that all death from disease would be covered by the policy because a normal person would not intentionally expose himself to the bacteria which cause disease. Therefore, contracting disease would always be accidental. There would then be no difference between an accident and a health policy. [Burns v. Employers' Liability Assurance Corporation, Ltd., 234 Ohio St. 222, 16 N. E. (2d) 316; Chase v. Business Men's Assurance Co. of America, 51 Fed. (2d) 34.] In the latter case the identical question under practically the same policy provisions was presented for decision. The court, denying recovery on the policy, said that the ordinary man draws a clear distinction between bodily injury and disease and that under the exclusion clause the policy did not cover death resulting from typhoid fever, which was a disease not brought about by accidental bodily injuries. The above decision appears to be the only one at this writing which is entirely in point.

In giving the exclusion clause, such a construction as to hold death from typhoid fever was without its terms, the respondents caused conflict with our decisions that unambiguous language must be given its plain meaning and enforced as written. Respondents' opinion should be quashed. It is so ordered. All concur.