15531

WEST v. PALMETTO STATE LIFE INSURANCE COMPANY

(25 S. E. (2d), 475)

October, 1942.

*Mr. Ashley C. Tobias, Jr.,* of Columbia, S. C., and *Messrs. Love & Thornton* of Greenville, S. C., Counsel for Appellant,

*Messrs. Wyche, Burgess & Wofford,* of Greenville, S. C., Counsel for Respondent,

April 27, 1943.

Mr. Associate Justice Stukes delivered the unanimous opinion of the Court:

A single sharp issue is presented by this appeal. The life of Broadus F. West was insured under two policies issued by appellant. The respondent was the beneficiary. They contained provisions for double indemnity in case of accidental death, but provided that such would not be applicable in the event that death should occur while the insured was "engaged in military or naval service in time of war," and with other reductions of the liability of the company in such case. Stipulations of fact upon which the case was tried are that the insured was enlisted in the United States Navy as a seaman first class when he was killed at Pearl Harbor on December 7, 1941, by Japanese bombers, along with approximately thirty-five hundred others.

It was admitted also upon the trial that the insurer knew of the insured's naval service and accepted premiums upon the policies with such knowledge from 1939, but it was agreed that no question of waiver is involved. Introduced in evidence was the Congressional declaration of war against

Japan. It was by resolution passed on December 8, 1941 (the day after the well-known sneak attack by Japan referred to above, in which the insured met death), which was approved at ten minutes after four o'clock in the afternoon of that day. It was entitled a "Joint Resolution declaring that a state of war exists between the Imperial Government of Japan and the Government and the people of the United States," etc. The preamble recites that "Whereas the Imperial Government of Japan has committed unprovoked acts of war", etc. The body of the resolution, in so far as now pertinent, is as follows: "The state of war between the United States and the Imperial Government of Japan which has thus been thrust upon the United States is hereby formally declared." Public Law 328, Dec. 8, 1941, c. 561, 77th Congress, 1st session, 50 U. S. C. A. Appendix note preceding Section 1.

The case was tried without a jury in the Court of Common Pleas for Greenville County on September 16, 1942, and afterward, on October 12, 1942, an order was filed by the trial Judge awarding judgments for the full amounts sued for, overruling the defenses upon the restrictive clauses in the policies referred to above. The holding was that the provisions in the policy contracts were made in contemplation of the law of the United States under which only Congress may declare war, which it had not done at the time of the attack by enemy forces upon Pearl Harbor so the latter did not constitute war in the legal sense or within the meaning thereof intended in the policies. Judicial notice was taken of the fact that at the time of the attack high diplomatic representatives of Japan were in conference with the President and Secretary of State of this nation, professedly in an effort to preserve peace, from which, and the other facts of record, it was found that a state of war did not at that time exist between the two nations. The exceptions question this holding and there is no other issue involved.

Did the insured's death occur in time of war? In the second edition of Webster's New International Dictionary, G. & C. Merriam Co., 1939, war is defined as "a contest by force between two or more nations or states, carried on for any purpose; armed conflict of sovereign powers; declared and open hostilities." And it is noted as follows: "The United States Constitution (Art. 1, Section 8, Par. 11) provides that Congress shall have power 'To declare War, to grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water.'" [2] Bouv. Law Dict., Rawle's Third Rev., 1914, page 3419, quotes 1 Kent 61, as follows: (War is) "the state of nations among whom there is an interruption of all pacific relations, and a general contention by force, authorized by the sovereign." The foregoing is found in Vol. 3, page 3419 of that work as is the following upon the same subject: "The Constitution of the United States (Art. 1, Sec. 8) provides that Congress shall have power to declare war. See Mrs. Alexander's Cotton, 2 Wall, 404, 17 L. Ed., 915; *Miller v. United States,* 11 Wall, 268, 20 L. Ed., 135; *Tyler v. Defrees,* 11 Wall, 331, 20 L. Ed., 161. An Act of Congress is necessary to the commencement of a foreign war and is in itself a declaration; 1 Kent, 55. *It fixes the date of the war*; Thayer, Const. Cas., 2352." (Emphasis added.)

The definition of war in Corpus Juris, 67 C. J., 336, is as follows: "War in the legal sense is the state of nations among whom there is an interruption of all pacific relations and a general contestation of arms by authority of the several sovereigns; it is not a mere contest of force, but must be an armed struggle carried on between two political bodies each of which exercises *de facto* authority over persons within a determinate territory, and its existence is determined by the authorized political department of the government. So, lawful war can never exist without the actual concurrence of the war-making power, but may exist prior to any contest of the armed forces. The

Courts are bound by a declaration or determination by the proper department of government that a war exists, while until there has been such a declaration or determination the Courts cannot take judicial notice of the existence of a war by their government."

Very pointed is the following from the same volume, page 338: "A court cannot, however, take judicial notice of a war by its government until there has been some act or declaration creating or recognizing the existence of war by the department of the government clothed with the war-making power."

It is seen from the foregoing authorities that the declaration by Congress of war on Japan on December 8 was the only legal way in which this country could be placed in a state of war with that aggressor nation. The Constitution so provides, Art. 1, Sec. 8, *supra.* That the policy contracts were entered into by the parties in contemplation of that clear law, and subject to it, cannot be denied; and they are bound by it.

Appellant relies strongly upon two decisions from other jurisdictions (*Vanderbilt v. Travelers' Ins. Co.,* 112 Misc., 248, 184 N. Y. S., 54, and *Stankus v. New York L. Ins. Co.,* 1942, 312 Mass., 366, 44 N. E. (2d), 687) which upon consideration we do not think are contrary in reason or conclusion to our view of the instant case. They involved respectively, a death upon the S. S. Lusitania, sunk by German submarine long prior to the commencement of our war in 1917-18 against the Central Powers, and a death upon the destroyer Reuben James, lost on patrol in the Atlantic months before the commencement of our present war with Germany. But the policy provisions in question in those cases were quite different from those that are now under consideration. In one the policy excluded liability "if the insured's death resulted from war or any act incident thereto." And the other policy denied coverage for "death resulting, directly or indirectly, wholly or partly, from war."

The policies in the present appeal contained restrictive provisions effective when the insured was "engaged in military or naval service in time of war," as pointed out above, very clearly meaning the engagement of the insured in such service of his country "in time of war."

And this case was fought out in the Court below upon the question, stated hereinabove whether our present war with Japan had begun on December 7, 1941, when the insured died as the result of Japanese attack on that day, and the controversy has not concerned itself with whether the insured died as the result, direct or indirect, of just any war, as was the question in the cited cases. Appellant recognized this narrow view of the issue presented in the opening paragraph of its printed brief and said: "The only real question for the consideration of the Court is whether on December 7, 1941, the United States of America, in the armed forces of which young West was then serving, was at war   *   *   *." We think it clear that the stated question should be, and it is, answered in the negative.

We are impressed with respondent's argument that it would be as logical to contend that the attack by the Emperor's fliers upon the U. S. S. *Panay* in the Yangtze river several years before was the beginning of the present war, as to so contend with respect to the sneak surprise attack on Pearl Harbor. The incidents do appear to have differed only in magnitude and location, and the declaration of war more promptly followed the latter. Japan's pretensive claim of mistake of identity in the case of the *Panay* has been discredited; it is believed that it was intended to test the will of this nation to resist aggression.

The exceptions are overruled and the judgments affirmed.

Mr. Chief Justice Bonham, Messrs. Associate Justices Baker and Fishburne, and Circuit Judge Philip H. Stoll, Acting Associate Justice, concur.