Robert J. LYNCH (Plaintiff), Appellant,

v.

The NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, a Corporation (Defendant), Respondent.

No. 29140.

St. Louis Court of Appeals.

Missouri.

April 19, 1955.

Joseph Wall, and Arthur Kreisman, St. Louis, for appellant.

Thompson, Mitchell, Thompson & Douglas, and Harold I. Elbert, St. Louis, for respondent.

MATTHES, Judge.

This is an appeal by plaintiff-appellant from an adverse judgment rendered by the trial court, a jury having been waived by the parties, in an action on a policy of insurance issued by the defendant-respondent.

The suit was instituted in the magistrate court, no pleading was filed by defendant to plaintiff's petition, and that court rendered a judgment in favor of plaintiff for the total sum of $900, $750 being the

amount plaintiff claimed under the policy and $150 thereof being attorney's fee. From the judgment so rendered an appeal was taken to the circuit court, where the cause was submitted on a stipulation of facts and certain documentary evidence from which it appears:

Defendant issued policy No. 4525114003 on June 18, 1945, whereby, in consideration of the payment to it of a weekly premium of 18¢ the defendant insured the life of plaintiff and obligated itself to pay at his death, to the named beneficiary, the sum of $500, provided the policy was at that time in force and effect. Under the contract the defendant was also required to pay to the insured during the continuance of the policy in force, a sum equal to one and one half times the amount of the aforesaid benefit in the event he suffered loss by severance of one foot at or above the ankle, provided "that the Company shall not be liable for any benefit for loss of eyesight or limbs *if the loss results from service in the military or naval forces of any country at war*". (Italics ours.)

On or about August 31, 1950, while serving in the United States Army in Korea, plaintiff was wounded in combat and as a result of the wound so received his right foot was amputated on June 12, 1951, at Fitzsimmons Army Hospital at Denver, Colorado. At the time the wound was sustained and on the date of said amputation the policy was in force and effect. The defendant waived necessary proof of loss and denied liability on the ground, "that the company shall not be liable for any benefit for loss of eyesight or limbs if the loss results from service in the military or naval forces of any country at war" (policy provision), and that the loss of plaintiff's foot was occasioned by service in the military forces while this country was at war.

The sole question for determination by this court is: Was the Korean conflict a "war" within the meaning of the exempting provision of the policy upon which the defendant relies to defeat the claim asserted by plaintiff? Plaintiff strenuously contends that, "there can be a war only when the same is declared by Congress under its constitutional authority"; that inasmuch as there was never a formal declaration of war by the Congress we should, by the application of one of the principles relating to construction of contracts, interpret the policy to mean that the Korean conflict was not a war.

Specifically, plaintiff argues that an ambiguity exists in that portion of the policy under attack; that if the defendant intended to limit its liability because of the factual situation that concededly existed and which brought about plaintiff's disability, it should have "placed a limitation on the word 'war' by adding the words 'declared' or 'undeclared' war or some such similar phrase of limitation"; that since the policy was prepared by defendant the ambiguity must be construed against it. In short, the plaintiff would have us place a highly technical meaning upon the term "war" and hold that it means nothing less than a constitutionally declared war.

■ The rule is firmly established in Missouri that insurance policies, like other contracts, receive reasonable interpretations, and that in construing the terms of a policy the courts discharge their full duty when they ascertain and give effect to the intention of the parties, as disclosed by the contract they have entered into. Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co., 356 Mo. 687, 203 S.W.2d 415; Prange v. International Life Ins. Co. of St. Louis, 329 Mo. 651, 666, 46 S.W.2d 523, 526; 80 A.L.R. 950, 957; St. Louis Police Relief Ass'n v. Aetna Life Ins. Co., 236 Mo.App. 413, 154 S.W.2d 782, 787; Ray v. Mutual Benefit Health & Accident Ass'n, Mo.App., 220 S.W.2d 622, 625, 626.

■ The principle that when the terms of an insurance contract are ambiguous, equivocal or uncertain so that the intention of the parties cannot be clearly ascertained by the ordinary rules of construction, the questionable terms are to be construed against the insurer and in favor of the insured, is equally well settled. Central

**34**

Surety & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S.W.2d 76, 78; Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, loc. cit. 101, 102, 57 A.L.R. 615; Henderson v. Massachusetts Bonding & Ins. Co., 337 Mo. 1, 84 S.W.2d 922, loc. cit. 924; Chamberlain v. Mutual Ben. Health & Acc. Ass'n, Mo. App., 260 S.W.2d 790; 29 Am.Jur., Sec. 166.

 A second principle auxiliary to the determination of intent is that plain and unambiguous language must be given its plain meaning. Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co., supra; Wendorff v. Missouri State Life Ins. Co., supra; State ex rel. Prudential Ins. Co. of America v. Shain, 344 Mo. 623, 127 S.W.2d 675, loc. cit. 676, in which Judge Douglas, speaking for the Court en Banc, said: "Where there is no ambiguity, there is no room for construction. Unequivocal language is to be given its plain meaning though found in an insurance contract. State ex rel. New York Life Insurance Co. v. Trimble, 306 Mo. 295, 267 S.W. 876. This is so even when considering a restrictive provision of a policy." Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99." And the courts are not authorized to pervert language or exercise inventive powers for the purpose of creating an ambiguity when none exists. Central Surety Ins. Corp. v. New Amsterdam Cas. Co., supra; Wendorff v. Missouri State Life Ins. Co., supra.

 In light of the rule last expressed, can we say the phrase, "military or naval forces of any country at war", and in particular the word "war" appearing in said phrase, when given their plain and ordinary meaning, are so tainted with ambiguity that there is room for construction in which we must apply the rule of "strictly against the insurer and liberally in favor of the insured?" We think not.

It is of course true that the United States Constitution, Article I, Section 8, provides the Congress has the power to declare war. However, logic dictates that a war in fact can exist absent a formal declaration by Congress, indeed the Supreme Court of the United States and courts of sister states have recognized that this country has engaged in war even though the Congress of the United States failed to make a declaration thereof. Before noting said authorities, we observe that definitions of war reflect the common understanding of war as war in fact.

In 56 American Jurisprudence, Section 2, page 133, war is thus defined:

"War is an armed struggle or contest by force carried on for any purpose between two or more nations or states exercising at least de facto authority over persons within a given territory and commanding an army prepared to observe the ordinary laws of war. War may also be defined as consisting in the exercise of force by bodies politic against each other and under the authority of their respective governments with a purpose of coercion, and as that state in which a nation prosecutes its rights or its claims by force of arms."

Webster's definition is:

"The state or fact of exerting violence or force against another, now only against a state or other politically organized body; esp., a contest by force between two or more nations or states, carried on for any purpose; armed conflict of sovereign powers; declared and open hostilities." Webster's New International Dictionary, Second Edition, Unabridged, page 2871.

In the decision by the Supreme Court of the United States in Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 873, 96 L.Ed. 1153, decided June 2, 1952, Mr. Justice Jackson, in his concurring opinion, and in referring to the Korean conflict, said:

"Of course, a state of war may in fact exist without a formal declaration."

A brief review of the transactions prior to the commencement of actual hostilities in Korea is necessary to an understanding of the acts which precipitated the conflict. On June 25, 1950, the United Nations Security Council adopted a resolution, noting with grave concern the armed attack upon the Republic of Korea by forces from North Korea; determined that such action constituted 'a breach of the peace and, among other things, called upon all members to render every assistance to the United Nations in the execution of the resolution. Two day later, June 27, 1950, another resolution was adopted by the same council recommending "that the members of the United Nations furnish such assistance to the Republic of Korea as may be necessary to repel the armed attack and to restore international peace and security in the area".

The United States, a member of the United Nations, promptly furnished its vigorous support, and combatant activities continued without interruption to and including the date plaintiff herein received the injuries which eventually resulted in the loss of his foot, and such activities resulted in heavy casualties being inflicted upon the youth of our nation serving in said area, as hereinafter disclosed.

Notwithstanding that the conflict possessed all of the characteristics of a war in fact as hereinafter more forcibly demonstrated, plaintiff insists that we should hold that because there was not a constitutional declaration thereof there was no war within the contemplation and intention of the parties to the contract of insurance, and relies upon Beley v. Pennsylvania Mutual Life Ins. Co., decided by the Supreme Court of Pennsylvania, February 14, 1953, reported in 373 Pa. 231, 95 A.2d 202, 36 A.L.R.2d 996. That case involved construction of a provision in policy issued by the defendant nearly identical to the phrase in the policy sued upon herein. Andrew Beley, serving in the U. S. Army, was killed in action in the Korean conflict. In the suit to recover the beneficiary advanced the same contention before us, i. e., that the conflict was not a "war" within the meaning of that word as it appeared in the contract. The majority opinion, concurred in by four of the judges, upheld plaintiff's right to recover, holding to the technical viewpoint that the parties to the contract contemplated a war declared by Congress. Two of the judges refused to follow the opinion as expressed by the majority and the reasoning to be found in the dissenting opinion of Justice Bell, is, in our judgment, more logical and persuasive, and obviously the result of the application of the principle that, in construing a contract, the true intent of the parties should be paramount.

Although not cited or referred to in plaintiff's brief, our research discloses that the case of Harding v. Pennsylvania Mut. Life Ins. Co., 373 Pa. 270, 95 A.2d 221, was decided by the Supreme Court of Pennsylvania on the same day the opinion in the Beley case was filed. The accidental benefit clause in the policy in the Harding case contained the same provisions as in the Beley policy, and therefore the court adopted its reasoning in the Beley case and held the company liable under the double indemnity provision of the policy. Again two of the judges dissented. Our objection to the reasoning in the Beley case applies with equal force to the Harding case.

Moreover other jurisdictions called upon to determine whether the Korean conflict was a war within the meaning and contemplation of the parties to insurance contracts have consistently refused to follow the Beley case.

Western Reserve Life Ins. Co. v. Meadows, decided by Supreme Court of Texas, October 7, 1953, found in 261 S.W.2d 554, involved the precise question of whether the conflict constituted a war. In deciding that it did the court cited and quoted from the opinion of Justice Grier in the Prize Cases (The Amy Warwick) 2 Black 635, 17 L.Ed. 459, 477, involving the question of whether a war de facto between the States existed in 1861 prior to formal declaration of war by Congress, as follows, 261 S.W.2d loc. cit. 556:

"'If it were necessary to the technical existence of a war that it should

have legislative sanction, we find it in almost every Act passed at the extraordinary session of the Legislature of 1861, which was wholly employed in enacting laws to enable the government to prosecute the war with vigor and efficiency.' "

The Court, in the Western Reserve Life Ins. Co. case also said, 261 S.W.2d loc. cit. 556:

"The opinion in Pang v. Sun Assurance Co. of Canada, 37 Hawaii 208, 218, after referring to several decisions by United States courts, says: 'Those cases are authority for the admitted proposition that no "formal" declaration is necessary to the creation of a "state of war", and that by making payment to the officers and men engaged on a war basis and other informal acts the Congress recognizes the existence of a "condition" of war.' See also Hamilton v. McClaughry, C.C., 136 F. 445, 451; Bas v. Tingy, 4 Dall. 37, 1 L.Ed. 731, 733–734; State of Virginia v. West Virginia, 11 Wall. 39, 20 L.Ed. 67, 72–73; Wharton v. Wise, 153 U.S. 155, [14 S.Ct. 783] 38 L.Ed. 669, 676."

In Weissman v. Metropolitan Life Ins. Co., 112 F.Supp. 420, 421, decided by the United States District Court, S.D.California, C.D., May 20, 1953, the policy provided for payment of $5,000 in event of death and for additional $5,000 if insured died as the result of bodily injuries caused solely by * * * accidental means while insured was " 'in the military, naval or air forces of any country at war.' " The insured was killed by enemy fire at Mandae-ri, Korea, on August 31, 1951. In a well reasoned opinion the court upheld defendant's contention that the United States was at war within the meaning of the policy provision under consideration. The reasoning of the court as demonstrated by the following language is particularly apropos to the disposition of this cause, loc. cit. 425:

"We doubt very much if there is any question in the minds of the majority of the people of this country that the conflict now raging in Korea can be anything but war. Certainly those who have been called upon to suffer injury and maiming, or to sacrifice their lives, would be unanimous in their opinion that this is war—war in all of its horrible aspects. And the families deprived of the love and companionship of their sons, brothers, husbands and fathers— who meet each day with hope and fear for their boys and men in Korea—and the widows and orphans of the men who died there—certainly they are aware of the stark reality that the Korea conflict is war."

The Superior Court of New Jersey, in Stanbery v. Aetna Life Ins. Co., 26 N.J. Super. 498, 98 A.2d 134, 137, on June 29, 1953, held that the Korean conflict was a war in interpreting a war clause which exempted defendant from liability if death resulted " 'from military or naval service in time of war' ". In refusing to follow the Beley case the court said: "However, a reading of the majority and dissenting opinions in that case will demonstrate that the Supreme Court of Pennsylvania gave a legalistic, technical construction of the word 'war.' " The New Jersey Court found and decided that the said conflict was a war within the intention of the parties as expressed by the language in the exclusion clause of the double indemnity provision of the policy.

In the cases of Langles v. Iowa Life Ins. Co., April 7, 1954, by the Supreme Court of Iowa, 63 N.W.2d 885; Gagliormella v. Metropolitan Life Ins. Co., June 25, 1954, by United States District Court D. Massachusetts, 122 F.Supp. 246; and Carius v. New York Life Insurance Company, October 6, 1954, United States District Court, S.D.Illinois, N.D., 124 F.Supp. 388, 390, so called war clauses identical or very similar to the clause for interpretation by this court, were considered and in each case it was ruled that the Korean conflict was a war and recovery was denied.

It is of significance that the court in the Carius case found:

"Specifically, the Court refers to transfer of equipment, materials and services to Korea, 22 U.S.C.A. § 1580, aid to Korea, 22 U.S.C.A. §§ 1551, 1552, 1703, military assistance to Korea, 22 U.S.C.A. §§ 1602, 1603, temporary extension of statutes punishing espionage, etc., 18 U.S.C.A. §§ 798, 2157, 2391.

"Also, the Court takes judicial notice of the passage by Congress of the Servicemen's Indemnity Act, which provides $10,000 free insurance to all servicemen killed in action after June 27, 1950, Title 38 U.S.C.A. §§ 851–858; the Combat Duty Pay Act increasing the pay of all servicemen in Korea combat zone since 1950, 50 U.S.C.A. Appendix, §§ 2351 and 2353; tax exemption for military forces in combat zone in Korea after June, 1950, 26 U.S.C.A. § 22(b) (13); disability and pension rights to Korean War veterans, 38 C.F.R. 1, Vet.Adm., para. 3–1511; free postage in Korean combat zone for Army personnel, 50 U.S.C.A.Appendix, § 891; rent control for Korean War veterans, 50 U.S.C.A.Appendix, § 1884; industrial aid to Korean veterans, 22 U.S.C.A. § 1547; automobiles for disabled Korean War veterans, 38 U.S.C.A. §§ 252a–252e; housing preference for Korean veterans, 12 U.S.C.A. § 1715e; 42 U.S.C.A. §§ 1575, 1581. * * *

"On August 19, 1953, the Department of Defense issued a report on U. S. casualties killed, wounded and missing in action in the Korean area to be a total of 139,834, of whom 25,604 were killed in action, 103,492 wounded in action, and 10,748 missing or captured in action.

"Based on Department of Defense figures, the Court takes judicial notice of the fact that the total casualties in the Korean War are over three million, with total casualties in the ROK and UN side of 1,474,259. At the time the Korean armistice was executed the Secretary of State issued a statement in which he stated that 'The Chinese and Korean Communist armies have sustained about 2 million casualties and of the 10,000,000 people of North Korea, one out of every three has died from the war ravages.'"

Plaintiff also relies upon West v. Palmetto State Life Ins. Co. decided by Supreme Court of South Carolina, 202 S.C. 422, 25 S.E.2d 475, 145 A.L.R. 1461; Rosenau v. Idaho Mutual Ben. Ass'n, by the Supreme Court of Idaho, 65 Idaho 408, 145 P.2d 227; and Savage v. Sun Life Assur. Co. of Canada, by the District Court W. D. Louisiana, Monroe Division, 57 F.Supp. 620. In each case the insured was killed at Pearl Harbor on December 7, 1941, as the direct result of the sneak attack of the Japanese, and the issue presented required the court to determine whether the attack constituted a war within the meaning of the war clause contained in each policy. The question was ruled adversely to the insurer in those cases.

In the Rosenau and West cases it is evident that the courts placed a technical, narrow and legalistic construction upon the word "war" as it appeared in the policies, and the decisions were bottomed on the concept that courts may not take judicial notice of the existence of war until it is formally and officially declared by the Congress of the United States; and that the parties so intended when the contracts were entered into; whereas the court in the Savage case, although in effect holding that the attack did not constitute a war because a formal declaration thereof had not been made by Congress, also used language demonstrating rather clearly its opinion was motivated because the insured lost his life as a result of the attack upon Pearl Harbor and at a time when "we were at peace with that nation, in fact, actually negotiating (certainly in good faith on our part, although fraudulently and deceitfully by the Japanese) for settlement of our differences by peaceful terms".

But see New York Life Ins. Co. v. Bennion, 158 F.2d 260 in which the Circuit Court of Appeals, Tenth Circuit, in con-

sidering a factual situation identical to that in the Rosenau, West and Savage cases, supra, concluded "that the formal declaration by the Congress on December 8th was not an essential prerequisite to a political determination of the existence of a state of war commencing with the attack on Pearl Harbor", loc. cit. 264. In finding against plaintiff the court reasoned that there was nothing in the subject matter, context or purpose of the contract to indicate that the parties intended to use the word war in the technical sense of a formally declared war, but contracted with reference to a "shooting war".

See also Stankus v. New York Life Ins. Co., 312 Mass. 366, 44 N.E.2d 687, 688, decided October 29, 1942, dealing with a factual situation disclosing that insured as a seaman was lost at sea when the ship U.S.S. Reuben James was sunk by a torpedo during the night of October 30, 1941. Holding that plaintiff could not recover the double indemnity benefit because of the provision which excluded liability if the death resulted "'directly or indirectly, from * * * (d) war or any act incident thereto'", the court said, in refuting the contention that the United States was not at war:

"But the existence of a war is not dependent upon a formal declaration of war. Wars are being waged today that began without any declaration of war. The attack by the Japanese on Pearl Harbor on December 7, 1941, is the latest illustration. This is not a modern method, for it has been said that, from out of one hundred eighteen wars that occurred between 1700 and 1872, in hardly ten did formal declarations precede the commencement of hostilities. Phillipson, International Law & The Great War, page 53. * * *

"As in the case of any other contract, the words of an insurance policy, in the absence of ambiguity, must be given their usual and ordinary meaning. The term 'war' is not limited, restricted or modified by anything appearing in the policy. It refers to no particular type or kind of war, but applies in general to every situation that ordinary people would commonly regard as war."

We are not willing to shut our eyes to the inescapable fact that the United States was engaged in a "shooting war" in Korea, which is clearly and forcefully demonstrated by casualties inflicted upon members of the military forces of the United States in the total sum of 139,834, of whom 25,604 were killed, 103,492 wounded, and 10,748 missing or captured. Carius v. New York Life Ins. Co., supra. What additional proof is required to conclusively establish that such grim consequences can only result from a war as that term is understood by individuals of ordinary and common understanding?

We have concluded and hold that when the policy of insurance which is the subject of this suit was issued, the parties contracted with reference to war in its real and practical sense and meaning; that since the Korean conflict constituted a war within the contemplation and intention of the parties, and plaintiff received his disability while participating in said war, he is precluded from recovering because of the exclusion clause which is a valid part of the contract.

The judgment of the trial court was proper and is affirmed.

WM. R. COLLINSON and DOUGLAS L. C. JONES, Special Judges, concur.