--------o--------

### Baker *v.* Gordon and Another.

War.—The state of war may exist without a declaration on either side. Page 208.

Trial by Jury.—The provision of the constitution of the *United States* relative to trial by jury, applies only to the federal courts. Page 209.

Same—Habeas Corpus.—It has been the practice in this state, as well before as since the adoption of the constitution, to try the issues in *habeas corpus* cases by the court or judge, without the intervention of a jury. Such a proceeding is not a civil case within the meaning of section 20 of the bill of rights. Page 209.

APPEAL from the *Marion* Common Pleas.

GREGORY, J.—On the petition of appellant, supported by her affidavit, a writ of *habeas corpus* was issued, directed to the appellees, commanding them to have the body of *John H. Baker* forthwith before his honor, *Charles A. Ray*, judge of said court, and show cause why the said *John H. Baker* was restrained of his liberty, etc.

The defendant *Coit* made the following return:

" The undersigned, *D. R. Coit*, one of the respondents named in said writ, for answer thereto, says that the said respondent was, on the 14th day of *May*, 1861, appointed to the office of first lieutenant in the Eleventh Regiment of Infantry of the *United States* army, and was afterward— to-wit: on the 15th day of *August*, 1861—duly commissioned and qualified as such, and now here presents said commission to the court; that, on the 14th day of *January*, 1862, this respondent was acting, in pursuance of a detail and appointment of his colonel commanding said regiment, as a recruiting officer for said regiment in the city of *Indianapolis*, in the state of *Indiana*, which detail and order is now shown to the court; that, on said 14th day of *January*, 1862, the said *John H. Baker* presented himself to this respondent to be enlisted and sworn into the service of the *United States of America* as a private of said Eleventh Regiment of Infantry. And having been duly examined by *John S. Bobbs*, examining surgeon at said post, agreeably to the army regulations, and having been certified by said surgeon to be free from all bodily defects and mental infirmity that would, in any wise, disqualify him from performing the duties of a soldier, he, the said *John H. Baker*, was then and there enlisted by this respondent, and by him sworn into the service of the *United States*, and subscribed the enlistment paper in such case provided; and this respondent now files herewith a copy of said enlistment paper, and makes the same a part of this return. And respondent says that, at the time of the enlisting said *Baker*, the government of the *United States* was engaged

in war, and that it was a time of war and not a time of peace. And respondent denies that he ever represented to said *John H. Baker* that he was or would be entitled to a bounty of one hundred and sixty acres of land. And respondent says, that at the time of the filing of said petition, and of the issuing and service of the said writ of · *habeas corpus*, the said *John H. Baker* was in the custody of this respondent as such lieutenant and recruiting officer, and was held by him, as he lawfully might be, to service as a soldier of the *United States*, in pursuance of said enlistment, and the laws of the *United States* in such cases made and provided. And respondent now brings the body of the said *Baker* into court to be dealt with as the court may direct."

This return was verified by the affidavit of respondent, and accompanied with the papers referred to, regular on their face.

*Gordon* filed his affidavit that he was a major of the Eleventh Regiment of Infantry of the *United States* army; that he was not acquainted with, and never to his knowledge saw, *Baker* prior to the commencement of this proceeding, etc.

Some proceedings were had that need not be noticed. The petitioner, *Sarah Baker*, filed a reply to this return in three paragraphs. 1. The general denial. 2. That, at the time of said supposed enlistment, *Baker* was the husband of petitioner, and has a family of wife and three children; that the *United States*, at the time of said supposed enlistment, was not at war, but was then *in a state of peace*. 3. That *Baker*, at the time of his supposed enlistment, was ignorant of the nature of the service to be rendered by him in the army of the *United States*, and respondent knew said fact; and that respondent willfully, and for the purpose of inveigling *Baker*, failed and neglected to first read over and explain to him the nature of the service before he signed the supposed enlistment, the length of the term of service required of him, and the pay, clothing, and rations which

he would be entitled to as a recruit in the *United States* army, etc.

The second and third paragraphs of reply were sworn to by petitioner.

The appellees demurred to the second and third paragraphs of reply; the demurrers were sustained, and appellant excepted.

The petitioner then demanded a jury to try the issue of fact, which was refused by the court, and she excepted.

There are two questions urged by counsel in this court. The first arises on section 930 of the regulations for the army, which is, that "no man, having a wife or child, shall be enlisted, *in time of peace*, without special authority obtained from the adjutant-general's office, through the superintendent."

It is urged that Congress has failed and refused to declare war; therefore it is *a time of peace* within the meaning of this regulation.

The Supreme Court of the *United States* have settled this question. 2 Black's R. 635. Mr. Justice *Grier*, in delivering the opinion of the court, said: "By the constitution, Congress alone has the power to declare a national or foreign war. It can not declare war against a state or any number of states, by virtue of any clause in the constitution. The constitution confers on the President the whole executive power. He is bound to take care that the laws be faithfully executed; he is commander-in-chief of the army and navy of the *United States*, and of the militia of the several states when called into the actual service of the *United States;* he has no power to initiate or declare a war either against a foreign nation or a domestic state. But by the acts of Congress of *February* 28, 1795, and 3d of *March*, 1807, he is authorized to call out the militia, and use the military and naval forces of the *United States*, in case of invasion by foreign nations, and to suppress insurrection against the government of a state or of the *United States*.

"If a war be made by invasion of a foreign nation, the President is not only authorized but bound to resist force by force. He does not initiate the war, but is bound to accept the challenge without waiting for any special legislative authority. And whether the hostile party be a foreign invader, or states organized in rebellion, it is none the less a war, although the declaration of it be *'unilateral.'* Lord *Stowell* (1 Dodson, 247) observes: 'It is not the less a war on *that account,* for war may exist without a declaration on either side. It is so laid down by the best writers on the law of nations. A declaration of war by one country only is not a mere challenge, to be accepted or refused at pleasure by the other.' This greatest of civil wars was not gradually developed by popular commotion, tumultuous assemblies, or local unorganized insurrections. However long may have been its previous conception, it nevertheless sprang forth suddenly from the parent brain, a *Minerva,* in the full panoply of *war.* The President was bound to meet it in the shape it presented itself, without waiting for Congress to baptize it with a name, and no name given to it by him or them could change the fact.

"As soon as the news of the attack on *Fort Sumter,* and the organization of a government by the seceding states, assuming to act as belligerents, could become known in *Europe*—to-wit: on the 13th of *May,* 1861—the Queen of *England* issued her proclamation of neutrality, 'recognizing hostilities as existing between the Government of the *United States of America,* and *certain states* styling themselves the *Confederate States of America.'* This was immediately followed by similar declarations or silent acquiescence by others. If it were necessary to the technical existence of a war that it should have a legislative sanction, we find it in almost every act passed at the extraordinary session of the legislature of 1861, which was wholly employed in enacting laws to enable the government to prosecute the war with vigor and

efficiency. And finally, in 1861, we find Congress '*ex majore cautela*,' and in anticipation of such astute objections, passed an act 'approving, legalizing, and making valid all the acts, proclamations, and orders of the President, etc., as if they had been *issued and done under the previous express authority* and direction of the Congress of the *United States*.'"

The highest considerations of patriotism, as well as the soundest principles of law, alike forbid the courts of the country from throwing any obstacles unnecessarily in the way of the government, in this stupendous struggle for national life.

It is contended that the petitioner had the right to a trial by jury, and this is the remaining question to be considered.

The provision in the constitution of the *United States* relative to *trial by jury* applies only to the federal courts. *Ex parte Smith*, 10 Wend. 449.

Section 20 of the bill of rights in the constitution of this state is as follows: "In all *civil cases*, the right of trial by jury shall *remain* inviolate."

The code, 2 G. & H. 318, sec. 716, provides that "writs of *habeas corpus* may be granted by the Supreme Court, Circuit Court, or Court of Common Pleas, *or by any judge of either* court, whether in term *or vacation;* and, upon application, the writ shall be granted without dealy."

Sec. 724, 2 G. & H. 319, directs, that "the court or judge shall proceed, in a summary way, to hear and determine the cause, and if no legal cause be shown for the restraint, or for the continuation thereof, shall discharge the party."

It has been the practice in this state, as well before as since the adoption of our constitution, to try the issues of fact in *habeas corpus* cases by the court or judge, without a jury. Such a proceeding is not a *civil case* within the meaning of section 20 of the bill of rights.

Mr. *Sedgwick*, in his treatise on statutory and consti-

tutional law, states the rule correctly.   He says: "It is also
to be understood that when the constitution guarantees
the right of trial by jury, it does not mean to secure that
right in all possible instances, but only in those cases in
which it existed when our constitutions were framed."

See, also, Hurd on *Habeas Corpus*, 299–300.

In the case of *Dronberger and Others* v. *Reed*, 11 Ind.
420, this court held, that this constitutional provision
does not extend to cases of assessment of damages for
laying out and repairing highways.

In *Ex parte Robinson*, 3 Ind. 52, this court held, that an
attorney at law, against whom charges have been pre-
ferred, under the statute, for malconduct in office, is not
entitled to have the charges tried by a jury.      .

The *habeas corpus* act, which is substantially the same
as all previous acts on this subject, by providing for a
*hearing* before *a judge in vacation*, shows that it is a pro-
ceeding not embraced in this clause of the bill of rights;
that it is not a civil case, and the *hearing* not a trial; but,
like a contested election, it is just what it is called, "the
writ of *habeas corpus.*"   See *French* v. *Lighty*, 9 Ind. 745.

Judgment affirmed, with costs.

*Thos. D.* and *R. L. Walpole, John C. Bufkin,* and *Solo-
mon Blair,* for appellant.