Alma S. Goodrich, Appellant, *v.* John Hancock Mutual Life Insurance Co. of Boston, Massachusetts, Respondent.

Third Department, November 27, 1962.

*Ralph L. Emmons* for appellant.

*Deyo, Turnbull, Turner & Normile* (*C. W. Turner* of counsel), for respondent.

HERLIHY, J.  Plaintiff appeals from a judgment and order of Special Term which denied summary judgment to the plaintiff and granted the motion of the defendant for summary judgment and dismissed the complaint on the merits.

The action was instituted to recover under the principal insuring and double indemnity clauses of two life insurance policies for the accidental death of her son, Robert Heath, who was killed in Korea in 1951 when a member of his company accidentally discharged a carbine while cleaning it.  Defendant insurance company pleaded payment of the face amount of the policies and affirmative defenses that by virtue of certain military service clauses forming part of the insurance contracts, it was relieved of liability to plaintiff for accidental death benefits. One policy, dated June 25, 1930, contained the following clause: " No Accidental Death Benefit will be paid if the death of the Insured resulted  *  *  *  from military  *  *  *  service in time of war."  The military service clause in the second policy, dated March 19, 1947, provided: No Additional Death Benefit will be paid if  *  *  *  the death of the insured resulted directly or indirectly, or wholly or partially  *  *  *  from a state of insurrection or war, declared or undeclared, or from service in the military  *  *  *  forces of any country at war, whether such war be declared or undeclared."

The complaint contained separate causes of action for each insurance policy and the answer set forth the exclusionary clauses as contained in the respective policies.

In disposing of the motions for summary judgment in favor of the defendant, Special Term determined (1) that the Korean conflict was an "undeclared war" within the meaning of the 1947 policy; (2) that it was a "war" within the intent of the contracting parties to the 1930 policy; and (3) that the death of the insured resulted from an accident made more probable by the demands of military service.

The plaintiff on this appeal raises a new issue as to the 1947 policy and contends she is entitled to judgment for the accidental death benefits as provided in each policy.

The facts are not in dispute. The decedent was a first-class private in the Signal Battalion assigned to Company "B" in Korea on September 27, 1951. At about 11:00 A.M., while in his tent, sitting on his bed, reading a book, he was struck by a bullet from a carbine accidentally discharged by a fellow soldier in an adjoining tent.

We concur with the finding of Special Term that the Korean conflict was a "war" within the meaning of the exclusionary clauses in both policies and while the wording is different in each instance, it is not necessary, in view of our holding, to consider any fine distinctions as to each policy.

The question of the meaning of the wording in the policies is primarily what was the intent of the parties at the time of the signing of the insurance contract. The fact that there was no formal declaration of war in Korea does not necessarily govern the rights of the parties or control the interpretation of the policy clause. It has been decided in this State that the extensive military and naval action at the Suez Canal in October, 1956, evidenced a war although there was no actual declaration thereof. (*Shneiderman* v. *Metropolitan Cas. Co. of N. Y.*, 14 A D 2d 284.) While the important issue in that case concerned when the conflict ceased, the court said (p. 287) : "We are to take cognizance of the fact that an insurance policy is generally a contract with the average man who presumably is unfamiliar with the existence of a state of war from the strictly political, military and/or legal standpoint. Such a man would read the term war in a policy exclusory clause in the sense that the term is commonly used and understood in the everyday expression rather than as used and understood in international relations or military affairs."

And again at page 288: "Moreover, in limiting the meaning of the terms 'war' and 'act of war' as used in the exclusory

clause to the meaning of war in its real and practical sense, we are giving effect to the apparent intention of the parties. The usual purpose of exclusory clauses, such as the one here, is to protect the insurance company from extraordinary hazardous risks; and from the insurance company's standpoint, the risk of loss of life incident to actual warfare is the risk that it must guard against. The provision for exclusion of liability from such a risk is necessitated by the inability to properly gauge premiums to cover such a risk and the need of protecting the company from financial disaster which could result from wholesale death occurring from actual warfare. Thus, reasonably, an insured could be expected to understand that he was not to be insured against death occurring during such a calamity.''

We are not so far removed from reality but to recognize that in the language of the average person, the conflict in Korea was considered a war, not by declaration but by the fact that our armed forces were sent there and participated in the fighting and our soldiers were wounded and died on the battlefields of Korea.

The plaintiff relies upon *Beley* v. *Pennsylvania Mut. Life Ins. Co.* (373 Pa. 231) and other out-of-State decisions that determine the Korean conflict was not a war. The insured in that case was killed in action while serving with the United States Army in Korea. The exclusionary clause was practically identical with the one in the 1930 policy. By a divided court, the majority therein stated (pp. 235–237): '' [I]t is clear that the action being waged in Korea is not a ' war ' within what may be termed the ' constitutional ' or ' legal ' sense of that term. * * * The existence or non-existence of a state of war is a political, not a judicial, question, and it is only if and when a formal declaration of war has been made by the political department of the government that judicial cognizance may be taken thereof; when so made it becomes binding upon the judiciary.''

The dissenting members in that case argued that the word '' war '', used without qualification or limitation, should be construed by giving the word its usual and ordinary meaning.

We are not prepared to follow the majority decision in that case but rather, we adopt the practical and realistic use of the word '' war '' as enunciated in *Shneiderman* v. *Metropolitan Cas. Co.* (*supra*). Cases decided in other States subsequent to *Beley* and under similar facts hold the word '' war '' should be given a realistic meaning. (*Stanbery* v. *Ætna Life Ins. Co.*, 26 N. J. Super. 498; *Langlas* v. *Iowa Life Ins. Co.*, 245 Iowa 713; *Lynch* v. *National Life & Acc. Ins. Co.*, 278 S. W. 2d

32 [Mo.]; *Western Reserve Life Ins. Co.* v. *Meadows,* 152 Tex. 559; *Christensen* v. *Sterling Ins. Co.,* 46 Wn. [2d] 713.)

It is accordingly our determination that the Korean conflict was a war within the meaning of the exclusionary clause in each policy.

A further question concerns whether the death of the insured resulted from military service.

Both exclusionary clauses are of the type known as '' result '' clauses rather than '' status '' clauses. That is, neither clause excludes a serviceman because it is a time of war but rather, both require that war cause the death of the serviceman or in other words, the clauses were intended to include accidents made more probable due to military service in time of war.

In *Neidle* v. *Prudential Ins. Co.* (299 N. Y. 54, 56) Judge FULD, speaking for the court, stated: '' The clause with which we are concerned, however, is not a status provision; it requires a causal link between military service and the insured's death.''

It certainly was the intendment of the policies to bring the present facts within the ambit of the wording of the exclusionary clauses where the accident was within the war zone and the instrument causing the accidental death was a necessary and vital part of the war effort.

There is a causal relation between the soldier and handling the carbine rifle, a necessary weapon in time of war, and its accidental discharge, striking a fellow soldier of the same company while on military duty within the actual war zone.

Nor can it be fairly said that the '' result '' clauses in the 1930 and 1947 policies are ambiguous so as to call into play the rule that the words should be construed favorable to the insured. A contract of insurance is no different from any other contract (*Drilling* v. *New York Life Ins. Co.,* 234 N. Y. 234, 241). Like other contracts, it is '' to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense.'' (*Johnson* v. *Travelers Ins. Co.,* 269 N. Y. 401, 408.)

We have a further complication as to the 1947 policy raised for the first time on this appeal. Plaintiff contends that the policy failed to have stamped thereon the necessary wording as required by former subdivision 4 [now 5] of section 154 of the Insurance Law, as follows:

'' The superintendent shall not approve the issuance of any policy of life insurance or industrial life insurance containing any war or travel exclusion or restriction unless such policy

shall have printed or stamped across its face in red and in capital letters not smaller than twelve point type the following:

" ' Read your policy carefully.

" ' Certain (*war, travel*) risks are not assumed.

state which or both

" ' In case of any doubt write your company for further explanation.' " (L. 1942, ch. 419, § 1.)

In answer to this argument on this appeal, the defendant insurance company first states that the issue was not raised on the pleadings or motion papers, that the issue was not considered by Special Term and may not be heard for the first time on this appeal. But in the event it is considered, the defendant insurance company states in its brief that the home office of the company advised that the 1947 policy was issued without the stamped notation with the approval of the Insurance Department; that the quoted section of the Insurance Law does not apply to double indemnity portions of a policy and further, such an error by the Insurance Department does not affect the contractual relations between the parties.

While ordinarily, new matters may not be raised for the first time on appeal, where it involves a question of law which may well mean a different decision than that of Special Term, it is our obligation in the interest of justice to give consideration to the issue raised and this is additionally so on an appeal from an order granting summary judgment.

While we might determine all of the issues here, we feel constrained to reverse the order and remit to Special Term for consideration of the issue raised for the first time on this appeal.

If we were to decide the same issue as presently before us, we would grant summary judgment to the plaintiff.

The order of Special Term should be modified by reversing the granting of summary judgment to the defendant as to the first cause of action in the complaint and affirming as to the granting of summary judgment as to the second cause of action in the complaint and as so modified, affirmed, with costs to the plaintiff.

BERGAN, P. J., COON, GIBSON and TAYLOR, JJ., concur.

Order modified by reversing the granting of summary judgment to the defendant as to the first cause of action in the complaint and affirming as to the granting of summary judgment as to the second cause of action in the complaint and as so modified, affirmed with costs to the plaintiff.