STUCKER *v.* COLLEGE LIFE INSURANCE COMPANY OF AMERICA.

[No. 19,832.    Filed July 7, 1965.    Rehearing denied November 8, 1965.    Transfer denied October 13, 1966.]

*Arthur J. Sullivan* and *David L. Millen,* of counsel, and *Steers, Klee, Jay & Sullivan,* of Indianapolis, for appellants.

*George B. Jeffrey, John Rabb Emison,* and *James B. Breen, Jr.,* of Indianapolis, for appellee.

FAULCONER, J.—The trial court sustained appellee's demurrer to appellant's fourth amended complaint, as amended by interlineation, hereinafter referred to as "amended complaint," and, upon appellant's refusal to plead further, entered judgment that appellant take nothing by her action and that appellee recover costs.

Appellant moved the court to reconsider its ruling on the demurrer, which motion was overruled by the court.

This appeal is from the aforesaid judgment and the errors assigned are 1) the court erred in sustaining appellee's demurrer to the amended complaint; and, 2) the court erred in overruling appellant's motion to reconsider sustaining of appellee's demurrer to the amended complaint. Appellant treats the two assignment of errors as presenting the same issues and presents one argument pertaining thereto.

The amended complaint was in two paragraphs, referred to as Count I and Count II. The first paragraph thereof alleged, in material substance, that on or about March 15, 1951, appellee, an Indiana corporation with its home office and principal place of business in Indianapolis, Indiana, executed its

policy of insurance on the life of Lyle D. Stucker in consideration of certain annual premiums; that by the terms of the policy, appellee agreed to pay to the beneficiary thereof the sum of $10,000 upon receipt at its home office of due proof of the death of the insured; that appellant, Marian Ford Stucker, as the wife of the insured, was the beneficiary of said policy; that on the 16th day of October, 1952, the said insured "died in Korea as a result of bullet wounds received in the Country of Korea while in the service of the United Nations"; that appellant furnished appellee with the necessary proofs of death and, although there were no premiums due on the policy and appellant had duly performed all provisions and conditions of the policy, appellee refused to pay the face amount of the policy. Prayer was for $10,000, with interest at six per cent per annum, and all other relief. A copy of the policy was attached to and made a part of the amended complaint.

The second paragraph of the amended complaint alleged that the double indemnity provisions of said policy provided for the payment of $20,000 if the death of the insured resulted directly, and independently of all other causes, from bodily injury effected solely through external, violent and accidental means. It further alleged that on October 16, 1952, while said Lyle D. Stucker was serving in the armed forces of the United Nations in the Country of Korea, he died as a result of bullet wounds; that the insured sustained bodily injuries effected directly to accidental, violent and external means, "while engaged in the Korean Action in the Country of Korea," from which injuries he died "in Korea"; and that said insured, "while serving in the armed forces of the United Nations, was killed as a result of wounds received in the Korean Action."

The furnishing to appellee of due proofs of the accidental death of the insured and the refusal of appellee to pay were also alleged. Prayer was for $20,000, with interest at six per cent per annum, and all other relief.

The policy contains an "Aviation and War Risk Exclusion Provision" applicable to the ordinary death benefits of the policy as alleged in the first paragraph of appellant's amended complaint. In pertinent part, said exclusion provision provides:

"If the death of the Insured

"(1)   Results from injury received or disease contracted outside the Home Area as a result of war, while the Insured is in war service or within six months after termination of such service; or

\*     \*     \*     \*     \*

"the amount payable to the beneficiary under this policy shall be a single sum equal to the premiums actually paid on this policy less any dividends returned, with compound interest at the rate of three per cent per annum, less any indebtedness on the policy; however, the amount so paid shall not be more than would be payable in the absence of this aviation and war risk provision, nor less than the valuation reserve on the life insurance benefit in this policy and on any dividend additions plus the value of any dividend deposits and less any indebtedness on the policy.

" 'Home Area' means the forty-eight states of the United States, the District of Columbia, the Dominion of Canada, the Territory of Hawaii and the Territory of Alaska. 'War' means war, or any act of war, declared or undeclared. 'War service' means being in the military, naval or air forces of any country, or international organization, at war, declared or undeclared.

"This provision shall be included in any policy to which this policy may be changed or converted.

"This provision shall not affect or modify the terms of any Double Indemnity or Disability Benefits which may be included in this policy."

Pertinent to the double indemnity benefit relied upon in the second paragraph of appellant's amended complaint, the policy provides that the double indemnity benefit shall be payable if the death of the insured,

"(1)   resulted directly, and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means, and

"(2) occurred within ninety days after such injury.

"This Double Indemnity Benefit shall not apply if the Insured's death

"(1) occurs while in the military, naval, or air forces of any Country at war, declared or undeclared; or

"(2) is caused or contributed to by war."

Appellee's demurrer challenged both paragraphs of the amended complaint on the ground that the same do not state facts sufficient to constitute a cause of action.

The memorandum to appellee's demurrer to Count I of the amended complaint sets forth the Aviation and War Risk Exclusion Provision and avers that it affirmatively appears from the allegations of the first paragraph of the amended complaint that the insured's death resulted from "an injury from a bullet wound received in the Country of Korea and outside the 'Home Area' as a result of war while in war service," within the definitions of "Home Area," "War" and "War Service" as defined in the aforesaid Aviation and War Risk Exclusion Provision.

The memorandum to appellee's demurrer to Count II of the amended complaint sets forth the aforesaid provisions of the policy applicable to the double indemnity benefits and avers that it affirmatively appears from the allegations of Count II of the amended complaint that the insured's death occurred in Korea "while [he was] serving in the military, naval or air forces of a country at war" and that his death "was caused or contributed to by war in the Country of Korea."

The real issue presented here is whether the allegations of Count I and Count II of the amended complaint, admitted by the demurrer, bring the insured within the terms of the exclusion provisions of said policy.

At the outset of argument, appellant urges that the "Law of Colorado" should govern the obligations of appellee with respect to the insurance policy here involved. It appears from

the application for the insurance, executed by the insured, that it was dated March 15, 1951, and gave his residence as Box 412, Delta (Delta County) Colorado, and his school address as 714 Remington, Ft. Collins, Colorado.

The application also shows that with the application the insured paid $10 in cash and gave a note for $208.50, one-half due November 1, 1951, and one-half due September 15, 1952. One of the provisions of the application is:

> "[T]hat if the premium is paid to the agent at the time of making the application and *the Company is satisfied that I* [applicant] *was an acceptable risk* for the insurance applied for, the insurance shall be effective as of the date of the application in accordance with the terms and conditions contained in the Receipt attached to and bearing the same serial number as this application." (Emphasis supplied.)

The policy states that it was issued on March 15, 1951, the same date as that of the application. We conclude, therefore, that the policy was made in the State of Colorado, as appellant claims. Such claim is not contested by appellee in its brief. The parties differ, however, on the question of whether the law of Colorado governs the obligation of appellee under the policy.

The materiality of the latter mentioned question arises by reason of a statute of Colorado, and a decision of the Supreme Court of Colorado is cited and relied upon by appellant in support of her contention that we must be governed thereby in our interpretation of the "war clauses" of the policy above set forth. The referred to statute of Colorado is as follows:

> "Any foreign life or accident insurance company doing business in the state of Colorado, and where the insurance contract is made in this state, shall pay its obligations when same are due and payable through its agent in the county where the contract was made, or at the office of its general agent within this state, after approval by the proper officers at the home office of the company, upon presentation of the insurance contract and proofs required thereunder by the insured, assigns or beneficiaries. This insurance contract shall be deemed to be made and payable in the

state of Colorado, if made through an authorized agent of such Insurance Company within this state, irrespective of where the insurance contract may be written." 1953 Colo. Rev. Stat. Anno, Vol. 3, ch. 72, Art. 3, § 22, p. 957.

Simply stated, said statute provides that where an insurance contract is made in the State of Colorado by a foreign insurance company doing business therein, the insurer, upon presentation of the contract and the proofs required thereunder, shall pay its obligations when due, *after approval thereof by the proper officers of the company at its home office*, through its agent in the county where the contract was made, or at the office of its general agent within the State. We see nothing within the terms of the quoted section of the statute which seeks to impose upon us the duty of adopting any particular construction of the insurance contract, or of applying the law of any certain jurisdiction in arriving at a conclusion as to the herein contested "obligations" of appellee under the policy. In fact, as we construe said Act, the "obligations" of the appellee under the policy do not become due and payable until the same are approved "by the proper officers *at the home office*" of appellee. (Emphasis supplied.) Under the heading of "General Provisions" of the policy, Clause 13 thereof provides that the "home office" of appellee, where the premiums are to be paid, is "in the city of Indianapolis, Indiana."

Upon the theory that we "will interpret the obligations of appellee with reference to the decisions of the Courts of Colorado," appellant cites and relies heavily upon the case of *Pyramid Life Insurance Company* v. *Masch* (1956), 134 Colo. 70, 299 P. 2d 117. It appears from the decision in that case that Masch, father of the insured, brought action on the insurance contract to recover the primary and double indemnity benefits of the policy. The latter contained a condition that in case of the death of the insured "while in military service or naval service in time of war . . .

the liability of the company shall be limited to the premiums paid. . . ." The insured, while a private in the United States Army, was killed in South Korea. The defendant-company moved to dismiss the complaint because it failed to state a claim upon which relief could be granted. The motion was overruled by the trial court and the company appealed. The Colorado Court in construing the meaning of the particular war clause contained in the policy before it, concluded that "[T]he existence or nonexistence of a state of war is a political, and not a judicial, question," and that judicial cognizance of a "state of war" may be taken only when a formal declaration of war has been made by Congress.

The Supreme Court of Colorado in the *Pyramid* case, at page 119 of 299 P. 2d, stated:

> "Any doubt concerning the meaning of a word or clause in a life insurance policy should be resolved in favor of the insured. *Had the defendant desired to cover the contingency here involved it would have been a simple matter to include proper words to indicate that 'war' meant 'hostilities,' whether or not declared by Congress to be a state of war.*" (Emphasis supplied.)

Also, in *Beley* v. *Pennsylvania Mut. Life Ins. Co.* (1953), 373 Pa. 231, 95 A. 2d 202, 36 A. L. R. 2d 996, (Cert. denied, 346 U.S. 820, 74 S. Ct. 34, 98 L. Ed. 346), cited for support in the *Pyramid* case, and likewise adhering to the constitutional theory of interpretation of a similar clause under like circumstances, after holding that the Korean Conflict was not a "war" within the terms of the war risk clause "in time of war," the court, at page 205 of 95 A 2d, said:

> "[I]t may be assumed, therefore, that if defendant had here meant to invest the term 'war' with a broader connotation than its 'constitutional' or 'legal' intendment, it would have effected this by the addition of the words indicating such an intention as, for example, 'declared or undeclared' war."

Also, Judge Musmanno, in a concurring opinion, at page 218 of 95 A. 2d, said:

"If the Beley insurance contract had included the phrase 'undeclared war,' which the Korean Conflict indubitably is, no problem would have arisen because the Korean Conflict, in the constitutional sense, indubitably is an undeclared war."

In the light of the distinction of the clauses in the decisions cited by appellant and the clauses in the present policy, and further considering the references made in the *Pyramid* and *Beley* cases to possible words of explanation, we feel that those cases cited by appellant, and specifically the *Pyramid* case, are not controlling in the case at bar.

There can be no question, we think, that the allegations of Count I of the amended complaint definitely show that the insured received his fatal injury outside the "Home Area," as that term is defined in the Aviation and War Risk Exclusion Provision of the regular policy. The primary argument advanced by appellant and appellee goes to the point of whether the admitted alleged facts of the amended complaint show that the insured received his fatal injury "as a result of war, while . . . in war service." "War" as defined in said policy provision means "war, or any act of war, declared or undeclared" and "war service" means "being in the military, naval or air forces of any country, or international organization, at war, declared or undeclared." The pertinent allegations of the amended complaint are that the insured died as a result of bullet wounds in the Country of Korea while in the service of the United Nations.

Appellant's whole advanced argument, aside from the already disposed of contention that we must be governed by the law of Colorado, is to the effect that "[b]efore the Korean Action can be considered legally as a war within the meaning of the Constitution of the United States it must be recognized and declared as a war by the Congress of the United States" which, appellant states, "Congress . . . to this day has not in its wisdom seen fit to do so.", and, further, that " 'war service' can only mean, legally speaking, declared

war service." Appellant asserts that according to the Supreme Court of Indiana "a state of affairs can be war only when so declared legally by the political and not the judicial department," and cites *Perkins* v. *Rogers* (1871), 35 Ind. 124. Of course, a declared or solemn war must be declared by the political department of government. There appears to be no conflict as to this principle. However, in *Baker* v. *Gordon and Another* (1864), 23 Ind. 204, at page 208, the Supreme Court quoted from the opinion of Justice Grier in 2 Black's R. 635, that a state of war " 'may exist without a declaration on either side.' " And quoted further from Justice Grier's opinion to the effect that "[i]f it were necessary to the technical existence of war that it should have a legislative sanction, we find it in almost every act passed at the extraordinary session of the legislature of 1861. . . ." This last quotation is of interest since the principle announced finds its way into the very latest cases dealing with the Korean Action, some of which are hereinafter referred to.

The difficulty we encounter with appellant's proposals is twofold. *First,* there is no allegation in the amended complaint that the United States was involved in the "Korean Action" on October 16, 1952, or that the insured, at the time of his fatal injury, was there in the miliary, naval or air forces of the United States; and, *Second,* the referred to exclusion provision of the policy does not, by expression, limit the word "war" to any country.

We find the following language in *Stankus* v. *New York Life Ins. Co.* (1942), 312 Mass. 366, 368, 44 N. E. 2d 687, at pages 688, 689:

"As in the case of any other contract, the words of an insurance policy, in the absence of ambiguity, must be given their usual and ordinary meaning. The term 'war' is not limited, restricted or modified by anything appearing in the policy. It refers to no particular type or kind of war, but applies in general to every situation that ordinary people would commonly regard as war. There is nothing in the policy that indicates that the word [war] was used

in any vague, indefinite or ambiguous sense. A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms. We hold that the clause exempting the defendant from liability where death is caused by war is not restricted in its operation to a death that has resulted from a war being prosecuted by the United States."

In defining "war service," the exclusionary clauses of the regular policy provide expanded reference to "any country or *international organization* at war." (Emphasis supplied.) In view of this language and the specific definitions of the terms employed, we fail to perceive the applicability, under the fact allegations of the amended complaint, of appellant's contention that the Congress of the United States had not formally declared war. The amended complaint puts the insured in the armed forces of the United Nations, but appellant advances no argument or discussion nor makes any reference to the legal consequences of such alleged fact as regards the involved exclusionary provision. Nor is the case of *Pyramid Life Insurance Company* v. *Masch, supra,* 134 Colo. 70, 299 P. 2d 117, relied upon by appellant, of any assistance to her on the last mentioned point because, in the complaint in that case it was alleged that the insured was a Private First Class in the military service of "the United States Army" and was killed in the vicinity of Hangye, South Korea. And, likewise, in the case of *Beley* v. *Pennsylvania Mut. Life Ins. Co., supra* (1953), 373 Pa. 231, 95 A. 2d 202, 36 A. L. R. 2d 996, also relied upon by appellant, it appears that Beley, the insured, was "serving with the *United States contingent* of the United Nations forces" when he was "killed" in action in Korea. (Emphasis supplied.) It is observed, from the herein insured's application, that he (Lyle D. Stucker) gave his occupation as that of student and that his address was 714 Remington, Ft. Collins, Colorado, and that he was a "Janitor of Military Bldg., on Campus." But we find nothing in the amended complaint or in the policy of insurance which avers or shows that the insured was serving in the military arm

or branch of the United States forces when he received his fatal injury.

Appellant, in the argument section of her brief, after setting forth pertinent allegations of Count I and Count II of her amended complaint and the applicable portions of the two exclusionary provisions, concludes that,

"From the foregoing, it therefore appears without question, the following:

"That Lyle Stucker, husband of Appellant, died on October 16, 1952, of bullet wounds received in the Country of Korea while serving in the armed forces of the United Nations, at which time appellee had in full force and effect a policy of insurance upon the life of said Stucker, including a double indemnity benefit clause, payable to Appellant as beneficiary.

"The only issue thus presented to this Court and the Court below, as raised by Appellee's demurrer, may be simply stated:

"Do the 'war clause' exclusions as set forth in the policy of insurance executed by appellee upon the life of Appellant's late husband apply in the case of death occurring from bullet wounds received by him while serving in the armed forces of the United Nations in the Korean Action?"

Appellant and appellee confine themselves in their briefs exclusively to this sole question except for the point of which State law controls. We are then left to determine whether the "Korean Action," alleged in the amended complaint, was "war," declared or undeclared, as the term is used in said exclusion clause of appellee's policy. Appellant offers us no help on this particular question and makes no mention of it in the argument section of her brief except to say that with reference to the Korean Action the Congress of the United States has never declared it a war. Under the challenged allegations of appellant's amended complaint it is not necessary to find that the United States was at

war; it is sufficient, in passing upon whether the amended complaint states a cause of action, to find whether, on October 16, 1952, a war existed between North Korea and South Korea (referred to in the amended complaint as the "Korean Action"). Much time and labor could be expended in setting forth herein, in detail, the factual situation which establishes quite clearly that on October 16, 1952, North Korea and South Korea were then actually at war with each other. Several cases contain extensive facts on this general issue to support this conclusion. *Thomas* v. *Metropolitan Life Insurance Company* (1957), 388 Pa. 499, 131 A. 2d 600; *Stankus* v. *New York Life Ins. Co., supra* (1942), 312 Mass. 366, 44 N. E. 2d 687; *Lynch* v. *National Life and Accident Insurance Co.* (1955), Mo. App. 278 S. W. 2d 32.

We consider it sufficient to state that according to the Department of Defense Report of August 19, 1953, the United States casualties in the Korean Conflict totalled 139,834, of whom 25,604 were killed in action. Also, that more than one million members of the armed forces of the United States were engaged in Korea from July 25, 1950, to July 27, 1953, and the cost of the conflict to the United States was about $22 Billion Dollars.

Many State Courts of last resort have been called upon to interpret similar "war risk" clauses as that in the *Pyramid* case and, under the same circumstances, some have followed the so-called constitutional interpretation as in the *Pyramid* and *Beley* cases. However, the majority have held that similarly worded clauses under like circumstances should be interpreted in their broad sense and that the Korean Conflict was a "war" within such clause. *Langlas* v. *Iowa Life Ins. Co.* (1954), 245 Iowa 713, 63 N. W. 2d 885; *Carius* v. *New York Life Insurance Company* (1954), D. C., 124 F. Supp. 338; *Lynch* v. *National Life and Accident Insurance Co., supra* (1955), Mo. App. 278 S. W. 2d 32; *O'Neil* v. *Union National Life Insurance Company* (1956), 162 Neb. 284, 75 N. W. 2d 739; *Thomas* v. *Metropolitan Life Insurance Com-*

*pany, supra* (1957), 388 Pa. 499, 131 A. 2d 600; *O'Daniell* v. *Missouri Insurance Co.* (1959), 24 Ill. App. 2d 10, 164 N. E. 2d 78; *Harding* v. *Pennsylvania Mut. Life Ins. Co.* (1953), 373 Pa. 270, 95 A. 2d 221. See also: Annot., 36 A. L. R. 2d 1018 (1954).

In some recent cases the courts have dealt with war risk clauses having more similarity to the ones we are considering in that they contain the words "declared or undeclared" either following, preceding or defining the term "war" used in said clauses. All cases of this nature which we can find have interpreted the Korean Conflict as an "undeclared war" within the provision of said exclusions. *Goodrich* v. *John Hancock Mut. Life Ins. Co. of Boston* (1962), 17 A. D. 2d 271, 234 N. Y. S. 2d 587; *Lamar* v. *John Hancock Mutual Life Insurance Co.* (1959), 249 N. C. 643, 107 S. E. 2d 65; *Wilkinson* v. *Equitable Life Assurance Society* (1956), 2 Misc 2d 249, 151 N. Y. S. 2d 1018; *Zuccardo* v. *John Hancock Mutual Life Insurance Co.* (1956), 20 Conn. Supp. 75, 124 A. 2d 926.

In *Goodrich* v. *John Hancock Mut. Life Ins. Co. of Boston, supra,* (1962), 17 A. D. 2d 271, 234 N. Y. S. 2d 587, at page 590, the court said:

"We are not so far removed from reality but to recognize that in the language of the average person, the conflict in Korea was considered a war, not by declaration but by the fact that our armed forces were sent there and participated in the fighting, and our soldiers were wounded and died on the battlefields of Korea."

In *Lynch* v. *National Life and Accident Insurance Co., supra,* (1955), Mo. App. 278 S. W. 2d 32, at page 38, the court said:

"We are not willing to shut our eyes to the inescapable fact that the United States was engaged in a 'shooting war' in Korea, which is clearly and forcefully demonstrated by casualties inflicted upon members of the military forces of the United States. . . . What additional proof is required to conclusively establish that such grim consequences can

only result from a war as that term is understood by individuals of ordinary and common understanding?"

Even if we were to concede, as appellant strongly urges, that we are bound by the holding of the Colorado Court in *Pyramid Life Insurance Company* v. *Masch, supra,* no benefit would be derived therefrom because that court specifically states that it was asked to take judicial notice that the engagements of "United States troops" in Korea constituted war. As we have heretofore pointed out, no such question is here before us.

For this court to hold that the so-called "Korean Action" was not a war would be closing our eyes to the events of our times and to the world in which we live. The world of chivalry in conflict between nations ended abruptly with the infamous attack on Pearl Harbor. The progress of science in the art of war has so far advanced that any thought we may entertain that our nation would be allowed an opportunity to formally declare war is certainly burying our heads in the sand to reality.

Not only has the machinery of attacking another nation been refined to a point that has virtually disposed of warning, but the weapons of attack and their destructive power are so devastating as to be nearly incomprehensible. In this world of restlessness in every country, with our resources, both material and human, being used in every corner of the earth, and possibly in the near future into outer space, the law must recognize what we know as individuals. To say that the attack on Pearl Harbor, the action in Korea, the activities in Viet Nam are not wars, and that those killed were not killed by war, is saying, in effect, that war is not war.

Attacks without warning, so-called police actions throughout the world, American service men on every continent, are a fact of life and a part of our way of life, whether we approve or not. Freedom for mankind is challenged every minute of every day and its enemies are unconcerned with the formali-

ties of yesterday and will resort to any means they feel necessary to accomplish their desired goal.

The parties here agreed, as stated in the written contract of insurance entered into between them, that "war" means "war, declared or undeclared." We must give effect to what the parties expressly agreed upon and we fail to find any authority, and none has been called to our attention, which authorizes us to disregard the express language of the parties, or place a strained interpretation thereon contrary to the intent of the parties expressed in words of common understanding and acceptation.

The exclusionary provisions here under surveillance are a private matter between the parties, unaffected by public interest. The general rules governing the construction of such contracts must be applied and, in determining the intent of the parties, the terms employed must be understood and interpreted in their popular and ordinary meaning. There is nothing in the insurance contract before us to indicate that any special or different meaning was intended by the parties, or that an absurd or unreasonable result would attain in applying the rule of interpretation according to the ordinary and popular meaning of the phraseology and wording used in the contract.

We see no reason or justification to say that when the parties to the herein policy agreement expressed that "war" meant war, "declared or undeclared," they did, in fact, mean a war duly declared by the proper authority. If we were to so say, then we would be in the position of remaking the contract for the parties. Such is not the proper function of this court.

In the case of *New York Life Ins. Co.* v. *Durham* ((1948), C. C. A. 10), 166 F. 2d 874, the Circuit Court of Appeals for the Tenth Circuit considered a clause nearly identical to the one before us, where the death of the insured occurred after the surrender of our enemies, but before an official declara-

tion by our Government formally terminating the existence of a state of war. The court, speaking through Judge Murrah, at page 876 of 166 F. 2d, stated:

"The parties in this case, as in the Bennion case, contracted with reference to a risk assumed for a premium paid. When they came to express the limitations upon the risk assumed, they obviously had in mind the extraordinary risk incident to service in the military forces of any country engaged in war, declared or undeclared. By including undeclared war, they chose not to use the word 'war' in its technical or formal sense, but rather in the practical and realistic sense in which it is commonly used and understood—in the sense it bears to the hazards to human life."

What we have already said and determined applies with full and equal force to the war exclusionary provision, above set out, pertaining to the contract limitation of liability of appellee for double indemnity benefits. It is therein provided that double indemnity benefits shall not apply if the insured's death "is caused or contributed to by war." We have held that the Korean Conflict alleged in appellant's amended complaint was war. The exclusionary provision does not restrict the word "war" to a war in which the United States is engaged. Count II of the amended complaint alleges that the deceased, insured, "sustained bodily injuries affected [effected] directly to accidental violent and external means while engaged in the Korean Action" from which injuries he died on October 16, 1952. Thus, it appears from the amended complaint that the insured's death was contributed to by the Korean Action which we have held to be a war.

In our opinion, when the policy of insurance, which is the subject of this suit, was issued, the parties contracted with reference to war in its real and practical sense and meaning, and we, therefore, conclude that neither Count I nor Count II of appellant's amended complaint stated a cause of action for recovery of the Ordinary Death Benefit or the Double Indemnity Death Benefit of the insurance contract herein.

Judgment affirmed.

Bierly, C.J., Carson, Hunter, Mote and Smith, JJ., concur.

Prime, P.J., concurs in result.

While Judge Martin participated in the hearing of oral argument and a conference of the judges above named, he was not present at the time of, and did not participate in, the adoption of this opinoin.

ON PETITION FOR REHEARING

FAULCONER, J.—Appellant has filed her purported petition for rehearing consisting of twelve allegations of error. Each is a flat conclusion that this court erred in holding or failing to hold, or ruling or not ruling, as appellant desired.

Appellee has filed a petition to dismiss the petition for rehearing as not complying with Rule 2-22, Rules of the Supreme Court. Although we have serious doubts concerning the compliance of said petition for rehearing with said rule, we are of the opinion that the petition to dismiss should be denied and appellant given the benefit of "sufficient compliance" with the rule. Therefore, appellee's petition to dismiss appellant's petition for rehearing is denied.

Specifications 1, 2, 3 and 4 of appellant's petition for rehearing merely state that this court erred in sustaining the trial court's action sustaining appellee's demurrer; in sustaining the trial court's overruling of appellant's motion to reconsider; in ruling that the law of Colorado did not control the construction of the contract; and in not giving full faith and credit to the laws of Colorado. Suffice to say that we carefully considered these issues and sufficiently covered them in our opinion.

Appellant's specifications 5, 6, 7, 8, 9, 10, 11 and 12 present no grounds for rehearing as they present new questions not assigned on appeal or argued in the briefs, in addition to the possible failure to comply with the requirements of Rule 2-22, *supra*.

A petition for rehearing should ask for a rehearing only on points which were properly presented at the first hearing and were overlooked or improperly decided. *City of Indianapolis, etc.* v. *Wynn et al.* (1959), 239 Ind. 567, 582, 157 N. E. 2d 828, 159 N. E. 2d 572; *State Board of Tax Commissioners* v. *Stanley* (1952), 231 Ind. 338, 340, 108 N. E. 2d 624 (Transfer denied); *Daviess-Martin Co. etc.* v. *Pub. Serv. Comm.* (1962), 132 Ind. App. 610, 625, 174 N. E. 2d 63, 175 N. E. 2d 439.

As Judge Bobbitt stated in *City of Indianapolis, etc.* v. *Wynn et al., supra* (1959), 239 Ind. 567, at page 582, 157 N. E. 2d 828, 159 N. E. 2d 572,

"This question was not briefed or urged in appellees' brief on appeal, and it cannot be raised for the first time on petition for rehearing."

We were concerned with the lack of argument on many issues, both in appellant's briefs filed herein, and at oral argument, but it is elementary that these issues cannot be first presented to this court on a petition for rehearing. Neither were we under a duty to search the record for grounds not assigned as error by appellant, or reasons not argued by appellant, in order to reverse the judgment of the trial court.

Appellant had the burden to show error on the part of the trial court by assignment of error, citation of authority and application thereof, and with cogent argument. Here, much to our bewilderment at the time, appellant chose to argue only two issues.

As we stated in our opinion, at page 737 of 208 N. E. 2d,

"Appellant, in the argument section of her brief, after setting forth pertinent allegations of Count I and Count II of her amended complaint and the applicable portion of the two exclusionary provisions, concludes that,

" 'From the foregoing, it therefore appears without question, the following:

" 'That Lyle Stucker, husband of Appellant, died on October 16, 1952, of bullet wounds received in the Country of

Korea while serving in the armed forces of the United Nations, at which time appellee had in full force and effect a policy of insurance upon the life of said Stucker, including a double indemnity benefit clause, payable to Appellant as beneficiary.

" 'The only issue thus presented to this Court and the Court below, as raised by Appellee's demurrer, may be simply stated:

" 'Do the "war clause" exclusions as set forth in the policy of insurance executed by appellee upon the life of Appellant's late husband apply in the case of death occurring from bullet wounds received by him while serving in the armed forces of the United Nations in the Korean Action?'

"Appellant and appellee confine themselves in their briefs exclusively to this sole question except for the point of which State law controls. We are then left to determine whether the 'Korean Action,' alleged in the amended complaint, was 'war,' declared or undeclared, as the term is used in said exclusion clause of appellee's policy. Appellant offers us no help on this particular question and makes no mention of it in the argument section of her brief except to say that with reference to the Korean Action the Congress of the United States has never declared it a war. . . ."

We carefully and thoroughly considered the issues properly presented by appellant. If she desired an opinion of this court on these matters contained in her petition for rehearing she had not only the duty under the rules of court, but the obligation to have presented them on appeal.

One can readily recognize the situation with which our appellate tribunals would be confronted if we would admit issues which litigants failed to properly present and argue on appeal to be grounds for granting a petition for rehearing.

That appellant had ample opportunity to raise, argue and have decided, both in the trial court and on appeal, those issues raised now for the first time in her petition for rehearing is readily apparent from the history of this case, and the many briefs and pleadings filed herein. That she chose not to do so until now is a question we need not determine. Our courts of appeal certainly have ample work to do in decid-

ing the many and varied issues that are presented to us without being required to speculate on what issues and questions should, or could, have been presented but were not for reasons known only to the appellant.

Petition for rehearing denied.

Bierly, C.J., Prime, P.J., Carson, Hunter, Mote and Smith, JJ., concur.

Wickens, J., not participating.

NOTE.—Reported in 208 N. E. 2d 731. Rehearing denied in 211 N. E. 2d 320.